## Galanty & Alper, et al. v. City of Maysville.

(Decided June 22, 1917.)

### Appeal from Mason Circuit Court.

1. Appeal and Error—Consolidation of Suits—Correct Judgment in Wrong Suit.—Where two suits were filed concerning the same subject-matter, but seeking relief on different grounds, and afterwards the suits were consolidated, the fact that the lower court gave a correct judgment but in the wrong suit did not constitute reversible error as the same judgment might have been rendered in the other suit.

2. Costs—Should Be Paid by Party Bringing Unnecessary Suit, Although Successful.—Where two suits were instituted when one would have accomplished the purpose intended to be attained by both, the party in fault in bringing the unnecessary suit should pay the costs growing out of it, although successful.

3. Municipal Corporations—Right of Mayor to Bring Suit—Consent of Council.—The mayor of the city may bring a suit when authorized by the council to do so, but he cannot bring a suit without its direction unless an emergency should arise demanding prompt action and it appeared that authorization from the council could not reasonably be obtained in time to permit him to take such steps as the exigencies of the case required.

4. Municipal Corporations—Fire Limits Ordinance.—The fact that a fire limits ordinance provides a penalty for its violation does not preclude a court of equity from taking jurisdiction to cause the removal of a structure erected in violation of the ordinance.

5. Municipal Corporations—Construction of Charter Containing Specific and General Provisions in Regard to Fire Limits.—Where a section of the charter gave the council authority to provide for the "prevention of fires" and also the power to restrain the erec-

tion of wooden buildings, the specific right conferred by the statute to regulate the erection of wooden buildings was not a limitation upon the power of the council to take reasonable means for the prevention of fire by supervising the erection of other buildings.

6. Municipal Corporations—Ordinance Regulating Erection of Buildings—Sufficiency of.—Although an ordinance stipulating the character of buildings that might be erected in fire limits was not very definite, it described as well as was practicable the character of buildings that could be and that could not be erected, and this was sufficient under the circumstances.

7. Municipal Corporations—Arbitrary or Unreasonable Ordinances.—A city council cannot enact arbitrary, unreasonable, or capricious ordinances. and the city authorities charged with the enforcement of these ordinances cannot act in an arbitrary, unreasonable, or capricious manner.

8. Municipal Corporations—Validity of Ordinances and Their Enforcement Subject to Review by the Courts—Presumption of Validity of.—When the city council has enacted an ordinance, the presumption is in favor of its validity, and unless it appears to be unreasonable, arbitrary, or capricious as applied to the facts of the particular case, the courts will not override it.

9. Municipal Corporations—Council Cannot Grant Permission to Erect Building in Violation of Ordinance.—A city council, although authorized by the charter to grant permission to erect buildings, cannot give permission to an individual to erect a building in conflict with an ordinance.

FRANK P. O'DONNELL and, H. W. COLE for appellants.

JOHN M. CALHOUN and M. M. LOGAN, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The controversy in this case grows out of a question as to the validity of certain ordinances and orders adopted by the city of Maysville establishing fire limits and declaring a structure within the limits to be a nuisance and ordering its removal.

The charters of cities of the fourth class, of which Maysville is one, provide in section 3490 of the Kentucky Statutes, that the city "council shall have power to provide for the prevention and extinguishment of fires. . . . . Also, to regulate and restrain the erection of wooden buildings, and to provide for the removal of same when built contrary to the ordinances of the city, and to provide for the condemnation and removal of unsafe walls, and to require that all new buildings shall be

erected as to their safety, subject to the approval of the city engineer or other designated authority· *Provided,* No building shall be erected except by permission of the board of council."

Pursuant to this statute, the city council of Maysville, in 1910, enacted an ordinance which, after describing the fire limits of the city, provided that "no frame or wood, part frame, hollow concrete blocks, iron-clad or veneered structure or tent shall be erected hereafter within the fire limits as above described. . . . Frame sheds not over ten feet high opened on at least one side, with side and floor covered with non-combustible material may be built, but a fence shall not be used as a side or back thereof. Such sheds shall not cover an area exceeding 500 square feet." It further provided that "Any person or corporation violating the provisions of this ordinance or refusing to comply with its requirements or any of the several features governed by it, shall for each and every such violation or non-compliance be guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars nor more than twenty-five dollars, and each non-compliance of ten days it so continues shall be deemed a separate and distinct offense."

In 1913 the city council granted to Galanty & Alper permission to erect within the fire limits of the city of Maysville "a metal side frame building and metal roof, in rear of their brick building." Thereafter, Galanty & Alper, or their tenant, Bartlett, erected a building at the place described in the permit and within the fire limits that was intended to be and was used as a garage or storing place for automobiles. This building, as the evidence shows, was composed of a wood frame, the exterior as well as the interior walls of the frame work being covered with corrugated iron sheeting, and the roof was made of a non-metal roofing material that rested on wooden sheeting supported by wooden rafters. There is also evidence to show that the original roofing material was non-combustible and probably as safe and as impervious to fire as a metal roof would have been; but a part of this roof, probably one-third of it, had been in some way destroyed and its place was supplied by a roofing material that was not fire-proof or non-inflammable.

After this, in 1916, a number of citizens owning property in the vicinity of this structure petitioned the council to require Galanty, Alper and Bartlett to remove the building Galanty & Alper had put up, because it was

dangerous and a menace to the other property in the neighborhood and increased the rate of insurance. The chief of the fire department also informed the city council in writing that he had examined the structure and found it to be in violation of the ordinance of 1910; that it increased the fire hazard within the block where it was situated, as well as the insurance rate on adjoining property, and was dangerous to life and a menace to the adjoining property; and he recommended that it be declared a nuisance.

After this a committee of the council appointed for that purpose investigated the structure and surrounding premises and made to the council a report substantially the same as the one made by the chief of the fire department, which report was adopted by the council and the structure declared to be a nuisance. On July 8, 1916, the mayor notified Galanty, Alper and Bartlett of the action of the board of council and ordered them to remove the structure within five days from the execution of the notice. Galanty, Alper and Bartlett not giving any attention to the notices, the city authorities were about to remove the building, when a suit was brought to restrain them from tearing it down or interfering with the use of it by the owners and tenant.

In answer to this suit the city set up the reasons why the building should be removed and asked for all proper relief.

Thereafter, the city filed an independent suit against Galanty, Alper, Bartlett and a Mrs. Holtz, on whose lot part of the building was put, seeking a mandatory injunction to compel them to remove the structure complained of.

After demurrers, special and general, had been overruled to this petition of the city, issues were formed and the two suits consolidated, and when the evidence was taken, it was submitted and a judgment rendered dismissing the suit of Galanty, Alper and Bartlett against the city, and granting the relief sought in the suit of the city against them and adjudging that Galanty, Alper, Bartlett, and Mrs. Holtz should within sixty days thereafter remove the structure.

It is first insisted by counsel for the appellants that the court erred in not sustaining the special demurrer to the petition filed by the city, and we think this contention, which was based on the ground that the city council had not authorized the suit to be brought, was well founded.

It appears that the mayor of the city directed the city attorney to bring this suit, but that the council was not consulted about it.

It is provided in section 3499 of the Kentucky Statutes, which is a part of the charter of cities of the fourth class, that "The mayor or chief executive shall see that the laws and ordinances of the city are duly enforced and observed, and are faithfully executed," and it is argued on behalf of the city that this statute authorizes the mayor to bring a suit when in his judgment it is necessary in order to enforce an observance of the ordinances of the city. There can be no doubt that the mayor of the city may bring a suit when authorized by the council to do so, but the statute does not confer this authority on the mayor in the absence of direction by the council unless an emergency should arise demanding prompt action on his part and it appeared that authorization from the council could not reasonably be obtained in time to permit him to take such steps as the exigencies of the case required.

In City of Louisville v. Murphy, 86 Ky. 53, it was held that in cases of emergency the mayor, without the authority of the city council, might bring a suit to protect the interests of the city. But the court further said: "We think the mayor has no general power to authorize litigation in behalf of the city or to control it. If so, he could disregard the legislative will of the municipality, bringing and dismissing suits at his pleasure. It is certainly an exceptional case where it should be allowed, and one that seldom arises; but the emergency in this case justified the act, as all the parties acted, no doubt, in the best of faith."

The principle announced in this case was followed in City of Owensboro v. Weir, Weir & Walker, 95 Ky. 158, and it was again held that except in cases of pressing emergency the mayor had no power to authorize the bringing of suits without the direction of the council.

In the case we have there was no emergency that authorized the mayor to bring the suit that was brought without first getting the consent of the council. Nor does it appear that the council had refused to give its consent or that the consent of the council could not have been obtained before the suit was brought. We are, therefore, of the opinion that the court should have sustained the special demurrer filed to the petition of the city. Indeed, the suit filed by the city was unnecessary. Under the issues which were properly made up by the pleadings in the suit filed by Galanty, Alper and Bartlett against the city

every question that could or did arise in the controversy could have been determined. If the suit of the city had not been brought, the court could have rendered the identical judgment that it did. But the error of the court in dismissing the suit filed by Galanty, Alper and Bartlett and giving a judgment on the suit filed by the city, did not at all affect the substantial rights of Galanty, Alper and Bartlett, or prejudice them in any way except in so far as they might be charged with the costs of the suit brought by the city. The cases were consolidated and the court rendered, as we will later endeavor to show, a correct judgment, but in the wrong case. Under these circumstances we will not reverse the judgment for this unsubstantial error, but the city must pay all the costs in the lower court caused by its suit and also the cost of copying in this record the pleadings, exhibits and orders in that suit.

It is next said that as the fire limits ordinance provided a penalty for its violation, this remedy was exclusive and the city must resort to it for protection against violations of the ordinance, and, therefore, the city could not in a civil suit enjoin the erection of a proposed building in violation of the ordinance, or ask the removal of a building or structure erected in violation of the ordinance; and the opinion in the case of City of Monticello v. Bates, 163 Ky. 38, is relied on in support of this contention.

It is true it was said in that case to be the general rule that where an ordinance prohibited the erection of buildings within the limits of a designated fire district and also provided a remedy for its violation by a prosecution and infliction of a fine, a court of equity would not grant an injunction to restrain the erection of such buildings. It was also said that this rule was based upon the theory that the penalty provided furnished a full, complete and adequate remedy and, therefore, and for that reason alone, the chancellor would not resort to the writ of injunction.

If the ordinance in this case did furnish a full and adequate remedy, it might well be said that the remedy so provided was exclusive. But we do not think the penal features of the ordinance furnish a remedy sufficiently full and adequate to deprive a court of equity of jurisdiction to restrain violations of the ordinance. The mere imposition of a fine, which in some instances persons violating the fire limit ordinance might be willing to pay,

would afford no relief from the situation their violation of the ordinance had created, because the building that was a menace to adjacent property would still continue to be a menace unless removed, and consequently property holders whose rights were affected by the violation of the ordinance would have no remedy at all. The only effective remedy in cases like this, when the facts justify its application, is the removal of the building or structure, and this remedy the court has power to apply in a proper state of case, although the ordinance may provide for the infliction of penalties upon the offender.

Another objection urged to the judgment is that the ordinance in question was not authorized by the charter of the city. In support of this it is said that the charter in section 3490 of the statutes, *supra,* limits the power of the council to regulate and restrain by ordinance the erection of wooden buildings only and permits the council to provide for the removal of such buildings only, while the ordinance enacted by the city undertook to prohibit the erection of "frame or wood, part frame, hollow concrete blocks, iron-clad or veneered structures or tents" within the fire limits. The charter in the section quoted gave the council authority to restrain the erection of wooden buildings and provide for their removal when built contrary to the ordinances of the city, and, in addition to this, "the power to provide for the prevention and extinguishment of fires." It is apparent that under this charter provision the council was not confined to prohibiting the erection of wooden buildings only, but might under this general authority make provision for the prevention of fires by regulating within reasonable bounds the erection of other buildings within the fire limits. The specific right conferred by the statute to regulate and restrain the erection of wooden buildings should not be construed as a limitation upon the power of the council to take reasonable means for the prevention of fire by exercising supervision over the erection of other buildings; and so we think the ordinance did not exceed the limits prescribed by the charter.

It may be true that under the general grant conferred by the ordinance the city authorities might in some instances attempt to exercise power in excess of their jurisdiction, but we do not think they did so in respect to the building involved in this case; and this being so, we are not concerned with what it might do in respect to other buildings. The ordinance prohibited the erection

of "iron-clad or veneered structures" of frame or wood, and this structure plainly comes within this prohibition because it was a frame building with an iron-clad or veneered outside covering, and, besides, at least a part of the roof was made out of combustible material. It may be true that the building was approved by the insurance board, but the approval of the insurance board did not answer the demands of the ordinance which confided to the city authorities the right to say what character of building should be erected and when the ordinance provisions had or had not been observed.

It is true, as argued by counsel, that the ordinance is not very definite in describing the quantity of wood or other material that may be used in buildings, but it would be extremely difficult, if not entirely impracticable, for an ordinance to set out with exactness just how much wood, how much metal, how much stone, how much brick and how much building material of other classes might be used in a structure, and so the best that the council could do under circumstances like this was to describe as well as was practicable the character of buildings that could be and that could not be erected within the fire limits, leaving it to the reasonable discretion of the city officers charged with the supervision of this matter to determine whether particular buildings were prohibited, subject, of course, to review of their actions by the court.

We might, however, here stop to say that while a city council cannot enact arbitrary or unreasonable or capricious building ordinances, and the city officers charged with the enforcement of these ordinances or the supervision or construction of building cannot act in an unreasonable, arbitrary or capricious manner, they are, nevertheless, invested with authority, and when this authority has been exerted, the courts will not be disposed to override it, unless it appears that the action taken, whether by the city council or its officers, was arbitrary, unreasonable or capricious. Town of LaGrange v. Overstreet, 141 Ky. 43. Common experience points out the necessity of regulating the character of buildings that shall be erected in thickly populated communities for the protection of adjacent property owners and of the public generally, and when such regulations have been adopted, it is necessary that there should be confided to the city authorities the power to supervise matters like this, subject, as we have said, to review by the courts.

We had before us in the cases of City of Monticello v. Bates, 163 Ky. 38; City of Monticello v. Bates, 169 Ky. 259, and Bates v. City of Monticello, 173 Ky. 244, questions involving the validity of fire limit ordinances, and many of the questions suggested in this case were passed on in those cases, and it is not necessary to extend this opinion repeating what was there said. It is sufficient to say that the general doctrine was laid down, that, although cities have the right to create fire zones and exercise a general authority over the erection of buildings therein, they do not have the authority to exercise arbitrary or unreasonable power.

Measured by this test, which was also recognized as correct in O'Bryan v. Highland Apartment Co., 128 Ky. 282; Tilford, Building Inspector, v. Belknap, 126. Ky. 244; Wells v. Town of Mt. Olivet, 126 Ky. 131, and Bradford v. Jones, Police Judge, 142 Ky. 820, we cannot say that the ordinance, when applied to the facts of this case, was either unreasonable or arbitrary, because the undisputed fact is that the structure was plainly prohibited by the ordinance. It is, therefore, manifest that the builders could not have been misled or deceived by the wording of the ordinance. Neither can it be said, when the circumstances mentioned are taken in consideration, that the ordinance was too indefinite to be enforcible. It might be indefinite when applied to some states of case, but it was not indefinite as applied to the one we have.

It is, however, probable that the builders of this structure were misled by the permit granted by the council authorizing them to construct a "metal side frame building and metal roof in rear of their brick building," notwithstanding the fact that they failed to cover the building with a metal roof as directed in the permit, although it should be said that the original roof put on the building appears to have been as impervious to fire and as acceptible to fire authorities as a metal roof would have been.

But if the permit granted by the council had been strictly complied with, it would not have afforded grounds on which to rest a good defense to the effort of the city to have the building removed, because the council could not have granted permission to an individual to erect a building in conflict with the ordinance. McGhee, Judge, v. Kennedy, 131 Ky. 27. The statute provides that "No building shall be erected except by permission of the board of council," but this does not confer authority on

the council to grant permission to individuals to erect buildings in violation of the terms of a general ordinance enacted for the purpose of regulating and controlling the erection of buildings. It only means that a building in conformity with a general ordinance that might have been enacted on the subject shall not be erected without permission of the council.

Upon the whole case, we think the judgment should be affirmed, and it is so ordered.