## Moll Company v. Holstner.

(Decided Jan. 9, 1934.)

250

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellant.

DAVID R. CASTLEMAN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Under contract with the city of Louisville, through its inspector of buildings, the appellant, the Moll Company, razed a row of dilapidated buildings owned by the appellee, Wells Holstner, in Highland Park, a part of the city. In his suit for damages, judgment for $5,500 was rendered against the company, from which it brings an appeal. The city was not a party to the suit.

Justification for the destruction of the buildings is claimed under the orders of the building inspector, whose authority or claimed authority is to be found in the Building Code, a part of the general ordinances of the city adopted under the provisions of sections 2742 and 2783, Statutes, which in this respect were construed in Fowler v. Obier, City Building Inspector, 224 Ky. 742, 7 S. W. (2d) 219. Section 27 of the Building Code makes it the duty of the inspector, whenever he shall find any structure "in such unsafe condition as to endanger life or property but in such condition that by the immediate application of precautionary measures such danger may be averted," to adopt and put into effect such measures as may be necessary or advisable in order to remedy the situation. Notice to and opportunity for the owner to do this are provided, and in case of a failure the inspector may act. Subsection (e) of that section of the Building Code which is particularly involved is as follows:

"If the time requirements of the notice specified in

this section have not been complied with, and said structure is in such an unsafe condition as to endanger life or property, it shall be the duty of the Inspector of Buildings to proceed forthwith to tear down or destroy, or cause to be torn down and destroyed, that part of said structure which is in such unsafe condition as to endanger life or property, and in cases where an unsafe structure cannot be repaired or rendered safe by the application of precautionary measures, such structure, or dangerous parts thereof, shall be torn down, or caused to be torn down, by said Inspector of Buildings, or by his order, and the expense of tearing down any part of the whole of such structure shall be charged to the person owning the same, and shall be added to the tax duplicate and become a lien against the property.''

The validity of such ordinances is generally recognized. The power of municipalities to declare and abate public nuisances and the right of summary action existed at common law under the police powers. It has not been impaired by the constitutions, for, if the property has in fact been used in violation of the law and is a public nuisance, the owner has no just reason to complain, and, if not, he has recourse to the courts. If a party cannot get a hearing or remedy in advance of the destruction or seizure of his property, he has the right to it afterward by an action for its value; the burden being upon the defendant to prove justification under the statutes. Cooley on Constitutional Limitations, 740, 741; McQuillin on Municipal Corporations, vol. 3, sec. 904; 4 R. C. L. 413; 19 R. C. L. 877; 20 R. C. L. 488; Lawton v. Steele, 152 U. S. 135, 14 S. Ct. 499, 38 L. Ed. 385; North American Cold Storage Company v. Chicago, 211 U. S. 306, 29 S. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276. This court has recognized such power in municipalities. Thus it is said in Polsgrove v. Moss, 154 Ky. 408, 157 S. W. 1133, 1136:

''In the exercise of the police power by the city, property which is a menace to public safety or health may be destroyed without compensation when this is necessary to protect the public, but the public necessity is the limit of the right.''

But a distinction is drawn between ordinances and action under them where there may be or was an emergency which required or appears to have demanded

summary invasion of private property rights without judicial procedure before divesture in order to protect the public from the effect of a nuisance, and where there may be or was no such emergency and need for immediate invasion. Varden v. Mount, 78 Ky. 86, 39 Am. Rep. 208; Joyce v. Woods, 78 Ky. 386; McGee v. Kennedy, 131 Ky. 27, 114 S. W. 298, 753; Allison v. Cash, 143 Ky. 679, 137 S. W. 245; Polsgrove v. Moss, supra; Board of Trustees v. McMurtry, 169 Ky. 457, 184 S. W. 390; Purnell v. Maysville Water Company, 193 Ky. 85, 234 S. W. 967, 23 A. L. R. 223; Galanty & Alper v. City of Maysville, 176 Ky. 523, 196 S. W. 169; Sevier v. City of Barbourville, 180 Ky. 553, 204 S. W. 294, L. R. A. 1918F, 1128; City of Corbin v. Hays, 244 Ky. 33, 50 S. W. (2d) 31.

The terms of the ordinance at bar, particularly that part under which this procedure was taken, as quoted above, appear to authorize summary action only where the emergency of danger exists. The appellee does not vigorously question its validity, for he says he has had his day in court. It appears to have been a profitable one, and all indignation and wounds seem to have been soothed by the liberality of the jury. But he has maintained, and continues to maintain, that his property did not come under the ban of the ordinance and that no right to destroy it existed. The appellant challenges those contentions, and here insists that the verdict is flagrantly against the evidence.

There was submitted to the jury the issue whether the buildings were in such unsafe condition as to endanger life or property and could not be repaired or rendered safe by the application of precautionary measures. If it found that they were not in that condition, an award in damages representing the market value of the structures immediately before they were torn down was directed.

Before giving a resume of the evidence to test the point raised, it should be said that the building inspector testified that on February 28, 1931, he mailed a letter to the owner at his regular address calling attention to the fact that the property involved was open, falling to pieces, and in a very dilapidated condition, and notifying him to have the building removed by March 10th. Holstner denied receiving it. On April 1st another letter was delivered in person to him by an assistant building inspector, as he testified. This re-

ferred to the previous communication which had been ignored, and notified the owner that, unless he had taken steps to remove the buildings by April 10th, the city would have it done at his cost. Holstner denied receiving this notice also. On April 22d invitations were sent out for bids to wreck the buildings, and one of these was addressed to Holstner. He admits receiving this one on April 28th and that he did nothing. The Moll Company offered to wreck the buildings for the salvage, plus $55, and its offer was accepted with the result stated. No objection was raised by the owner, but he filed suit some six weeks later for damages.

The appellee acquired the property in trade in September, 1928. The evidence concerning the condition as introduced by the defendant may be thus summarized: The property consisted of a row of one-story buildings, or a long building divided by cheap partitions into storerooms, each about 20 feet wide and 100 feet deep. They had been erected partly in 1906 and partly in 1909 or 1910 of a very cheap grade of lumber; some of it being secondhand. The foundations were wood piers or underpinning, raising the floors perhaps 2 feet above the ground. The ground was low, resulting in the accumulation of water and dampness under the floors. There were no plumbing or lavatory facilities in the buildings, which were used either as stores or dwellings as the opportunity for renting was presented. One of the rooms had been rented for $30 a month for a year before April, 1930, and since then and for a period of nearly a year all of them had been vacant. All of the windows and most of the doors were gone. The roof leaked, and many of the sills and floors were rotted so that in some of the rooms the floors had fallen in and in others they were entirely gone. The property was open and seems to have been the rendezvous of undesirable characters. There were straw and remains of bedding on the floors. The premises were filthy and unsanitary. Representatives of the fire department testified that they constituted a dangerous fire hazard and a menace to the community. Witnesses stated that the buildings had no value and the cost of repair would have been more than the buildings were worth after being repaired. Some of the salvaged material was disposed of for use in sewer construction work, but much of it had not been disposed of. The transaction re-

sulted in the loss of "plenty of money," according to Mr. Moll.

The evidence in behalf of the plaintiff is in conflict with that of the defendant. Holstner stated that the property he had given in exchange for this in September, 1928, was worth $18,000. At that time a local bank held a mortgage for $6,400 on it. It may be recalled, in passing, that the property values were exceedingly high at this time, and that the lots upon which the buildings rested were undoubtedly of more value than the buildings themselves. The owner attributes the vacancy of the buildings for so long a time to the fact that the street in front of them was torn up by the construction of a sewer. One of the buildings had, without his permission, been used for storage of material used in that work, and the proximity of the construction work had resulted in the windows being broken out. The buildings were perfectly straight and level. The doors were open but not broken. Some of the floors were entirely new. The roof also was in good condition, having been painted about a year. The buildings had been painted about three years before and were under good paint. In brief, Holstner's testimony as to the character of material in the buildings and their condition was in direct contradiction of the evidence produced by the defendant. With relatively unimportant deviations, a number of witnesses corroborate Holstner, although most of them were testifying from general observations. However, a former president of the real estate board of Louisville made a general inspection of the premises early in 1931 because the property was listed for sale. He testified that the substantial parts of the houses were generally good and only minor repairs would have been necessary. He placed the value of the buildings at $7,500. Another real estate agent, who claimed familiarity with the property, valued it at $13,000, and another one at $16,000 to $17,000. Holstner testified that the buildings could have been put in good repair for $100 and that their value was $15,000. He had $7,200 insurance on them. Mr. Moll, president of the defendant company, testified that he thought the buildings were worth $1,500 to $2,000, although, as stated, his firm had lost money in having accepted the salvage and paid $55 additional as compensation for wrecking the buildings.

The impression we receive from the evidence is that

the buildings could not be regarded as requiring emergency action, but with respect to value, that the verdict is a very liberal one. But it is not the province of an appellate court to deny the property owner his right to have the jury decide the issues and assess the damages where there is evidence of recognized probative value. The jury seems to have regarded the evidence of both groups of witnesses as being somewhat extravagant and split the difference in their respective valuations. The point that the verdict is flagrantly against the evidence must therefore be disallowed.

The appellant complains of the evidence that this property had been assessed for taxation at $3,900. The assessment included a small cottage which was not molested, of which the jury was told. The evidence, it is said, does not come within the rules under which similar evidence has been admitted in other cases, such as by way of impeachment or as admissions against interest. See Scott v. O'Neil's Adm'r, 62 S. W. 1042, 23 Ky. Law Rep. 331; Commonwealth, by etc., v. Combs, 229 Ky. 627, 17 S. W. (2d) 748. It did not appear whether this was the value fixed by the owner or the taxing authorities and seems to be hearsay. Juries and judges appreciate the weakness of human nature for securing as low tax assessments as possible, so the courts do not regard the tax roll as a very high species of substantive evidence of value. Since the value at which this property was listed was much less than that claimed for it in the evidence of the plaintiff, it may have had some effect in lowering the verdict rather than the converse. However, we cannot regard its admission as prejudicial to the rights of appellant. See L. & N. Railroad Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983; Sandy Valley & Elkhorn Railway Co. v. Bentley, 161 Ky. 555, 171 S. W. 178.

It is urged upon us that the appellant is estopped to deny the right of the city to destroy his property in order to abate the claimed nuisance, because having received notice to do so himself he did nothing, and upon being notified that the city would have the buildings wrecked he took no action to prevent it. It seems sufficient to say that the court does not consider the facts as of a character to sustain the defense of estoppel.

Wherefore the judgment is affirmed.