## Polsgrove, Mayor, et al. v. Moss.

(Decided June 17, 1913.)

### Appeal from Franklin Circuit Court.

1. Nuisance—Police Regulations to Protect Health of Public—Unsanitary Dwellings—Proceeding in Police Court to Remedy Nuisance—Notice.—Under statutory authority to make all police regulations to secure and protect the health and safety of the public, and to define and suppress nuisances, the city may by ordinance provide that houses intended for dwelling purposes which are so unsanitary or out of repair as to be unfit for habitation or unsafe for occupation or dangerous to the public or injurious to the health or morals of the community, shall not be rented or leased, and to provide that the owner may be fined in a proceeding in the police court if he fails to remedy the nuisance within twenty days after notice so to do.

2. Nuisance—Ordinance Providing for Judicial Proceeding to Suppress.—A city ordinance providing for a judicial proceeding in a

police court for the suppression of nuisances must be read in connection with the common-law rules governing judicial proceedings and will be construed as requiring the nuisance to be abated, not the structure to be removed, unless this is necessary to remedy the trouble.

3. Nuisance—Judgment of Police Court Abatement—Appeal.—From a judgment of the police court abating a nuisance, an appeal will lie to the circuit court although the fine is less than $25.

4. Ordinances—No Provision in Act Governing Third Class Cities to Test Validity of—When Injunction to Restrain Enforcement Will Not Be Granted.—There being in the act governing cities of the third class no provision for testing the validity of an ordinance by suit in the circuit court, and no ground for equitable interference being shown by the petition, an injunction restraining the enforcement of the city ordinance will not be granted.

JAMES H. POLSGROVE for appellant.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT 2Y CHIEF JUSTICE HOBSON—Reversing.

The act for the government of cities of the third class, including the city of Frankfort, provides:

"The common council of each of said cities shall, within the limitations of the Constitution of the State and this act, have power by ordinance. * * *

"To make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public; and to define, declare, prevent, suppress and remove nuisances either within the city or within one mile thereof. * * *

"To impose penalties upon the owners, occupant or agent of any house, wall, sidewalk, or other structure which may be considered dangerous or detrimental to the public, unless after due notice, to be fixed by ordinance, same to be removed or repaired; and to remove or repair same at owner's expense when suffered to remain contrary to ordinance." (Sec. 3290, Ky. Stat., subsection 16, 26).

Under the power thus conferred the common council of the city of Frankfort enacted the following ordinance:

"An ordinance to prohibit the maintaining, use, occupancy or letting of dwellings which are so unsanitary or out of repair as to be dangerous or unhealthy, and providing for the abatement thereof.

"Be it ordained by the common council of the city of Frankfort:

"Sec. 1. That no building, house or room, intended or designed for dwelling purposes, which is or may hereafter become, so unsanitary or out of repair as to render it unfit for habitation, or which is or may become unsafe for occupancy, or that may be considered dangerous or detrimental to the public, or injurious to the health or morals of the community, shall be rented, leased, let, hired out or permitted to be used, either with or without compensation.

"Sec. 2. That no building, house or room, intended or designed for dwelling purposes, which is or may become so unsanitary or out of repair as to render it unfit for habitation, or which is or may become unsafe for occupancy, or may be considered dangerous or detrimental to the public, or injurious to the health or morals of the community, shall be maintained or occupied.

"Sec. 3. Whenever any building, house or room, intended or designed for dwelling purposes, shall be unfit for habitation for any of the causes named in sections one and two of this ordinance, the occupant or occupants thereof shall vacate within ten days, and the owner or owners shall abate and remove the same within twenty days after receiving from the Mayor notice or notices so to do which notice or notices shall set forth the grounds therefor.

"Sec. 4. Upon complaint in writing made to him by the Health Officer of the city, or by petition filed with him, signed by three or more persons, owners of real estate residing in the city shall cause to be served, by the chief of police, in writing upon the occupants and owners of any such premises, the notice or notices provided for by section three, to be served by delivering or offering to deliver a copy to the person to whom it is directed, or if such person cannot be found, by delivering a copy to his agent, or by affixing such copy to the front door of the premises sought to be abated.

"Sec. 5. Upon the failure of the owner or owners to abate and remove any such building, house or room within the time required by section three, he or they shall be subject to a fine of not less than five nor more than twenty dollars, and ten dollars for each succeeding twenty-four hours it remains unabated, and it shall be the duty of the Mayor, at the expiration of said twenty days, to cause a warrant or summons against such owner or owners to be issued by the police judge, charging a violation of this ordinance, and if upon a trial of the

charge the party against whom the said warrant or summons was issued, shall be convicted, the judgment of conviction shall order the abatement and removal of the building, house or room designed in said warrant. Provided, that if the owner be a non-resident of the State or county of Franklin, he shall be proceeded against by warning order, as prescribed by the Civil Code of the State in proceedings against non-residents, and the fine fixed by this section shall not be imposed and the judgment of the court shall only require the abatement and removal of the structure so designated.

"Sec. 6. Whenever there shall be a conviction under the preceding section, it shall be the duty of the Mayor, in the name of the city, to contract with some suitable person or persons to abate and remove the structure designated in the warrant or summons upon which said conviction was had, at the cost of the owner or owners thereof, which cost, if not paid by the owner or owners, may be paid by the city, and the amount so expended shall be recovered by the city by suit in any court of competent jurisdiction.

"Sec. 7. Any tenant or occupant, not the owner of the premises, who shall violate section three shall be fined not less than two nor more than ten dollars, and each twenty-four hours after ten days notice, as required therein, shall constitute a separate offense.

"Sec. 8. All ordinances or parts of ordinances in conflict herewith are hereby repealed, and this ordinance shall take effect and be in force from and after its passage and approval by the Mayor."

After the ordinance had taken effect, the health officer of the city made complaint in writing to the Mayor that a certain house owned by Dulin Moss and intended for dwelling purposes was so unsanitary and out of repair as to render it unfit for habitation, unsafe for occupancy and dangerous to the health and morals of the community. The Mayor gave notice to Moss as provided in the ordinance notifying him within twenty days after receiving the notice to vacate, abate or remove the building. Moss thereupon brought this suit against the Mayor, the health officer and common council of the city, alleging that the city was without authority to pass the ordinance; that it was void; that to enforce the ordinance would deprive him of his property without due process of law, and deny him the equal protection of the laws; and that unless enjoined the defendants would at once

proceed to enforce the ordinance, destroy his property without compensation therefor, and proceed to fine him in the police court, all of which would produce great and irreparable injury to him. On a hearing of the case before the circuit court a permanent injunction was granted restraining the defendants and each of them from in any way interfering with the property or from proceeding by warrant or otherwise in the police court or in any other court, against the plaintiff for violation of the ordinance referred to; to all of which the defend-ants excepted and prayed an appeal to this court which was granted.

It is insisted for the plaintiff that the ordinance gives the authorities of the city of Frankfort the power absolutely to destroy and tear down houses intended alone for dwelling purposes; that whenever in the opinion of the proper authorities the house comes within section 1, it shall be the duty of the persons living in it to vacate within ten days, and the owner of the house shall be required to abate or remove it within twenty days. It is earnestly insisted that nothing in the statute was intended to confer such power, and that such power cannot be conferred under the Constitution.

In determining the proper construction of the ordinance the court should read it in connection with the statute under which it was enacted; for the language of the ordinance is largely borrowed from the statute and it is to be presumed that the city authorities were endeavoring simply to follow the statute. Under the act of the Legislature, the common council of the city is given power to make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public, and to define, suppress and remove nuisances, to impose penalties upon the owner or occupant of any house or other structure dangerous or detrimental to the public unless after due notice to be fixed by ordinance, the same be removed or repaired, and to remove or repair the same at the owner's expense, when suffered to remain contrary to the ordinance. Pursuant to the statute, section 1 of the ordinance provides that no house or room intended for dwelling purposes which is so unsanitary or out of repair as to render it unfit for habitation or unsafe for occupancy or dangerous or detrimental to the public, or injurious to the health or morals of the community, shall be rented or be permitted to be used, either with or without compensation. In this

section the city did not exceed the power conferred upon it by the statute. Whether the house is unfit for habitation, unsafe for occupancy or dangerous or detrimental to the public or injurious to the health or morals of the community, is a question to be determined under the facts of each particular case, and the house does not violate the section unless the circumstances existing are sufficient to establish the fact that it is so unsanitary or out of repair as to render it unfit for habitation, or that it is unsafe for occupation or dangerous or detrimental to the public or injurious to the health or morals of the community. The words "may be considered" are taken from the statute, the word "considered" being used in its old sense, and in equivalent to "reasonably regarded."

The second section is practically the same as the first except that it applies to the occupants of the house. The third section was evidently drawn to conform to that part of the statute which requires due notice to be fixed by ordinance before penalties may be imposed. Under this section the occupant has ten days to vacate the premises and the owner twenty days to remove or abate the nuisance after the notice is given. In arriving at the meaning of this section we must look not only at its words but the ordinance as a whole and the purpose intended to be accomplished. The ordinance is enacted under the police power to define, suppress and remove nuisances. It is aimed at dwelling places which are so unsanitary or out of repair as to be unfit for habitation or unsafe for occupancy or dangerous or detrimental to the public or injurious to the health or morals of the community. While in section 3, the words used are "the owner or owners shall abate or remove the same" the meaning is not that he is to remove the building, house or room, but that he is to remove the nuisance. If the house is so unsanitary as to render it unfit for habitation, he must put it in a sanitary condition if practicable. If it is so out of repair as to render it unfit for habitation, he must if this is practicable repair it and make it fit for habitation, or if it is unsafe for occupancy or dangerous or detrimental to the public or injurious to the health or morals of the community, he must remove the cause of the trouble. The object of the ordinance is to secure the removal of the nuisance, and when the nuisance is removed the ordinance is not violated. The dwelling itself is not required to be removed unless this is the only

practicable way to remove the nuisance. The removal of the nuisance, not the removal of the structure is the thing aimed at. The ordinance as a whole contemplates an abatement of the nuisance to be enforced by a judicial proceeding in the police court. The common law is in force in this State; all our courts are governed by it in administering justice; the police court in trying these cases will be guided by the common law in entering judgment. At common law in exercising their power to abate nuisances, the courts do not destroy property if it is practicable otherwise to remove the nuisance. Property may be destroyed if this is necessary to remove the nuisance. The general laws of the State governing all courts of justice must be borne in mind in construing the ordinance; for the judicial proceeding contemplated by it must be conducted according to these principles. If the structure is so out of repair or so unsanitary as to be unfit for habitation, or is dangerous to the public, and the trouble cannot be remedied at a reasonable cost considering the value of the structure when improved, the court may order it removed or he may in his discretion allow the owner to elect which course he will pursue where the matter is doubtful. In the exercise of the police power by the city, property which is a menace to public safety or health, may be destroyed without compensation when this is necessary to protect the public, but the public necessity is the limit of the right. First Nat. Bank v. Sarlis (Ind.), 28 Am. St. Rep., 185; Mayor v. Mulligan, 51 Am. St. Rep., 86; Bristol Door, Etc., Co. v. Bristol, 75 Am. St. Rep., 783; Sings v. City of Joliet, 127 Am. St. Rep., 323; Cooley on Constitutional Limitations, 740-741.

Section 4 merely provides the means by which the ordinance is to be put in operation in a particular case; section 5 provides the judicial proceeding by which the ordinance is to be enforced. If the owner has failed to abate the nuisance within 20 days after receiving notice from the Mayor as provided in section three a proceeding may be begun in the police court. No proceeding can be begun until the owner has had twenty days after notice to remove the nuisance. If a proceeding is begun, and it is made to appear that within the twenty days he abated or removed the nuisance the owner should be discharged. If in such a proceeding it appears that the owner did not abate or remove the nuisance within the twenty days the court may fine the owner as provided

in the ordinance, and order the abatement and removal of the nuisance. In providing for the abatement or removal of the nuisance, the court should follow practically the procedure in other nuisance cases; that is, if the house is unsanitary or out of repair or unsafe for occupation or dangerous or detrimental to the public or injurious to the health or morals of the community the court should determine by his judgment what is necessary to remove the trouble, and in his discretion he may give the owner himself a reasonable time to do the things provided for. In that event no steps will be taken by the Mayor, until the time so given by the court expires, and the Mayor is directed by the court pursuant to section 6 to proceed and execute the judgment of the court. The Mayor should report his acts to the court so that the court may determine if the judgment has been properly executed. If by the judgment of the police court the owner of the property is aggrieved, he can prosecute an appeal to the circuit court of the county. if the cost of abating when added to the fine exceeds $25; for the cost of abating is part of the penalty imposed, and if his real property is affected by the judgment he can appeal from that court to this court. (Leitchfield Co. v. Commonwealth, 143 Ky., 163).

It will thus be seen that the ordinance does not give the authorities of the city of Frankfort the power absolutely to destroy houses intended for dwelling purposes, and that the city authorities are powerless to do anything in the premises except pursuant to a judgment of a competent court, and that if any injustice is done the owner, he has ample remedy to protect himself by appeal. The power to remove nuisances has been exercised by courts of justice from the foundation of the common law. The owner or occupant of the premises is not subject to a fine under section seven unless the house is in the condition described in section 1, and in the exercise of the police power such houses may be required to be vacated. In Dillon on Municipal Corporations, the principles governing the subject are thus stated:

"It is to secure and promote the public health, safety, and convenience that municipal corporations are so generally and so liberally endowed with power to prevent and abate nuisances. This authority and its summary exercise may be constitutionally conferred on the incorporated place, and it authorizes its council to act

against that which comes within the legal notion of a nuisance; but such power, conferred in general terms, cannot be taken to authorize the extrajudicial condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not such. * * * It is a doctrine not to be tolerated in this country that a municipal corporation. without any general laws either of the city or of the State within which a given structure can be shown to be a nuisance, can, by the mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property in the city, at the uncontrolled will of the temporary local authorities.'' (Sec. 684).

''But under the power to abate nuisances, property lawfully erected and existing, or a house which is only a nuisance because occupied by a business which is such, cannot be destroyed or demolished. The public can proceed by indictment, or the business carried on in the house be suppressed.'' (Sec. 688).

''Finally, it may be remarked that the extent of municipal authority over nuisances depends, of course, upon the powers conferred in this regard upon the municipality. They may be general or specific, or both. The authority to preserve the health and safety of the inhabitants and their property, as well as the authority to prevent and abate nuisances, is a sufficient foundation for ordinances to suppress and prohibit whatever is intrinsically and inevitably a nuisance. The authority to declare what is a nuisance is somewhat broader; but neither this nor the general authority mentioned in the last preceding sentence will justify the declaring of acts, avocations, or structures not injurious to health or property to be nuisances.'' (Sec. 689).

''Tenement houses as popularly known, and also as defined by statute, have been regarded as a distinct class of buildings, susceptible of and requiring regulation by virtue of the police power. It is, therefore, within the power of the Legislature, either directly by statute or by authority conferred upon municipal corporations, to enact rules. and ordinances to regulate the manner of constructing these buildings for the purpose of promoting the health and safety of the inhabitants. It is not a valid objection to the exercise of this power that the expense of making changes in such buildings is imposed upon the owner, so long as the object of the law is with-

out doubt the promotion or the protection of the health of the inmates of these houses, or the preservation of the houses themselves, and consequently much other property, against loss or destruction by fire, and so long as the alterations or changes can be effected at a reasonable cost to the owner." (Sec. 698).

In the acts governing cities of the first and second class it is provided that the validity of a city ordinance may be tested by an action in the circuit court, but we find no such provision in the act governing cities of the third class. The petition does not show that relief in equity is required to avoid a multiplicity of suits; for it shows that only one proceeding is contemplated. It does not show that the plaintiff will suffer irreparable injury because it cannot be assumed that the police court will enter an improper judgment; and if he should do so, as we have said, the plaintiff has an adequate remedy by appeal. We, therefore, conclude that the ordinance is valid and that the plaintiff shows no right to relief in equity.

Judgment reversed and cause remanded for a judgment as above indicated.