BODEN and others, Appellants, v. CITY OF MILWAUKEE and another, Respondents.

*October 7—November 3, 1959.*

320

For the appellants there were briefs by *Boden & Lowry* of Milwaukee, and oral argument by *Robert F. Boden.*

For the respondents there was a brief by *Walter J. Mattison,* city attorney, and *John F. Kitzke,* assistant city attorney, and oral argument by *Mr. Kitzke.*

CURRIE, J. The plaintiffs ground their contention, that the ordinance as so attempted to be applied is unconstitutional, upon the due-process clause of the Fourteenth amendment of the United States constitution, and sec. 1, art. I of the Wisconsin constitution.[1] In *State v. McKune* (1934), 215 Wis. 592, 255 N. W. 916, this court declared that such section of our state constitution, in absence of the police power, would prohibit any legislation which

---

[1] Sec. 1, art. I of the Wisconsin constitution provides:

"All men are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

operated to restrict the rights and freedom of one individual or class and not of another. It has also been held that such provision of our state constitution is substantially equivalent to the equal-protection-of-the-laws and due-process clauses of the Fourteenth amendment. *Pauly v. Keebler* (1921), 175 Wis. 428, 185 N. W. 554. We are aware of no decision of this court which has determined that sec. 1, art. I of the Wisconsin constitution, imposes any greater restriction on the exercise of the police power than do the due-process and equal-protection-of-the-laws clauses of the Fourteenth amendment. No issue is raised on this appeal of any attempted unreasonable classification. It is only contended that the ordinance, as sought to be applied to the plaintiffs' building, deprives them of their property without due process of law.

We, therefore, deem that the issues on this appeal may be resolved by considering the following two questions:

(1) Does the attacked ordinance constitute a valid exercise of police power by the city of Milwaukee?

(2) If it does, is its attempted enforcement under the facts of this case against the plaintiffs' building an unlawful taking of property without due process of law?

It is well recognized that it is a legitimate exercise of the police power to require existing buildings used for human habitation to meet reasonable prescribed standards in order to protect the health and safety of the occupants. *Brennan v. Milwaukee* (1953), 265 Wis. 52, 60 N. W. (2d) 704, and *Adamec v. Post* (1937), 273 N. Y. 250, 7 N. E. (2d) 120, 109 A. L. R. 1110.

All of the affirmative acts required by the instant ordinance of the property owners clearly have a direct relationship to the health or safety of the occupants of the buildings to which such ordinance applies, except possibly the requirement that exterior wood surfaces shall be kept

reasonably protected by paint. However, a dwelling house, whose wood surfaces are not so maintained, soon becomes an eyesore and tends to depreciate adjoining property values. The photographs in the record taken of the plaintiffs' cottage, which depict its unpainted condition, afford a good example of this.

The city's police power with respect to enacting building regulations is not restricted to situations which only affect the public health and safety, but extends to anything which is for the good order of the city or the public welfare. Sec. 62.11 (5), Stats. The prohibition of a condition that tends to depress adjoining property values falls within the scope of promoting the general welfare and does not violate due process. *State ex rel. Saveland Park Holding Corp. v. Wieland* (1955), 269 Wis. 262, 270, 69 N. W. (2d) 217; *Pierro v. Baxendale* (1955), 20 N. J. 17, 118 Atl. (2d) 401, 408; and *Best v. Zoning Board of Adjustment* (1958), 393 Pa. 106, 141 Atl. (2d) 606, 612, 613.

The police power of a municipal corporation is not absolute but always is subject to the test of reasonableness. However, except in clear cases of oppressiveness or unreasonableness, it is not within the province of the courts to interfere with the exercise of such police power. This is because the legislative bodies of municipal corporations are *prima facie* the sole judges of the reasonableness of an ordinance enacted under their police power, and every intendment is to be made in favor of the reasonableness of such ordinance. *Highway 100 Auto Wreckers v. West Allis* (1959), 6 Wis. (2d) 637, 646, 96 N. W. (2d) 85, 97 N. W. (2d) 423. We find nothing so oppressive in the affirmative requirements of the instant ordinance as would warrant this court in holding that it is unreasonable.

The constitutionality of municipal housing ordinances applicable to existing buildings, which contained many pro-

visions fully as burdensome as those of the instant ordinance, was upheld in *Paquette v. Fall River* (Mass. 1959), 155 N. E. (2d) 775, and *Richards v. Columbia* (1955), 227 S. C. 538, 88 S. E. (2d) 683. It is our considered judgment that the instant ordinance constitutes a valid exercise by the defendant city of its police power and does not violate the due-process clause of the Fourteenth amendment.

We now approach the narrower question of whether the manner in which it is sought to enforce this ordinance against the plaintiff property owners constitutes a denial of due process. It is conceded that the present condition of plaintiffs' building clearly violates the ordinance. Ostensibly it lay within the power of the plaintiffs to remedy the violations and escape all penalties, as there are no facts in the record that this was not the case. The maximum fine which may be levied is one hundred dollars, and that feature of the ordinance is not attacked as oppressive.

The plaintiffs center their attack upon the threatened invoking of the power granted to the commissioner of health by the ordinance to condemn the building as unfit for human habitation. This power of the commissioner to condemn cannot be invoked merely because of some defect, such as lack of exterior paint which only has a remote, if any, bearing on the health and safety of the occupants or the public. Such right to condemn is expressly limited to buildings falling in the following three categories:

"(a) One which is so damaged, decayed, dilapidated, insanitary, difficult to heat, unsafe, or vermin-infested that it creates a hazard to the health or welfare of the occupants or of the public; or

"(b) One which lacks illumination, ventilation, or sanitary facilities adequate to protect the health or welfare of the occupants or of the public; or

"(c) One which, because of its general condition or location, is insanitary or otherwise dangerous to the health or welfare of the occupants or of the public."

The gist of the plaintiffs' argument is that such power of condemnation can only be exercised in the case of a building which constitutes a public nuisance. In support of such contention they quote the statement appearing in the opinion in *Milwaukee v. Milbrew* (1942), 240 Wis. 527, 533, 3 N. W. (2d) 386, that "it is only a *public* nuisance that may be punished by a municipality in the exercise of its police powers." Proceeding from this premise, it is argued that the plaintiffs' building does not constitute a public nuisance because its unsafe and insanitary condition affects but one person, the tenant.

The absence of window screens, and the existing conditions which render the premises favorable to the harboring of rodents, render it highly likely that the health of the neighbors may also be endangered by the plaintiffs' building. These conditions also pose a threat to people who enter the building as licensees of the tenant.

The persons whose health and safety the ordinance was designed to safeguard are not limited to a few people but embrace all those in the city who occupy any building for the purpose of living or sleeping.[2] It follows from this that the ordinance was enacted for the protection of the public welfare. However, the constitutionality of a regulatory measure enacted under the police power is not dependent upon the size of the class of persons it is intended to protect. *Kuhl Motor Co. v. Ford Motor Co.* (1955), 270 Wis. 488, 502, 71 N. W. (2d) 420, 55 A. L. R. (2d) 467. Enforcement of such a regulatory enactment is quite likely to affect but a few people at a time. The validity of the original enactment, including its enforcement procedures, should not be tested by the paucity of the number of persons adversely affected by a particular violation.

---

[2] A dwelling is defined by the ordinance as follows:
"Dwelling shall mean any building or structure, except temporary housing, which is wholly or partly used or intended to be used for living or sleeping by human occupants."

If a particular building is in such a condition as to threaten the safety or health of the occupants, and those of the general public who may enter it as licensees of such occupants, the police power of the city is broad enough in scope to authorize the condemnation of the building, if necessary to effectively protect such occupants and licensees.

Most of the cases which have upheld the abatement or condemnation of buildings under the police power, without compensation being paid to the owners, dealt with buildings which were a fire hazard. Annotations, 14 A. L. R. (2d) 73, 25 A. L. R. 120, and 3 A. L. R. 1630. However, the exercise of such power was specifically upheld in *Polsgrove v. Moss* (1913), 154 Ky. 408, 157 S. W. 1133, and in *Theilan v. Porter* (1885), 82 Tenn. (14 Lea) 622, 52 Am. Rep. 173, with respect to dwellings which became unfit for occupancy because of lack of repairs and unsanitary condition.

The facts in *Polsgrove v. Moss, supra* (p. 410), bear a close resemblance to those in the instant appeal. The city of Frankfort, pursuant to power delegated to it by the state legislature, enacted an ordinance that provided that no building intended or designed for dwelling purposes, which became "so unsanitary or out of repair as to render it unfit for habitation" should be maintained or occupied. It further provided that, upon receiving notice from the mayor that such a dwelling was unfit for habitation, the owner or occupant should vacate the premises, and the owner should abate the condition if practicable, otherwise to remove the building. If such condition were not abated, the city could remove the building after obtaining a court decree to such effect. After enactment, the health officer made complaint to the mayor that a certain private dwelling owned by the plaintiff was so unsanitary and out of repair as to be unfit for occupancy and dangerous to the health and morals of the community. The mayor then served the

notice prescribed by the ordinance upon the plaintiff. The plaintiff instituted suit against the mayor to enjoin enforcement of the ordinance on the ground, among others, that such enforcement would deprive him of his property without due process of law. The Kentucky court upheld the validity of the ordinance and denied the injunction. In its opinion it pointed out that before any court decree would be entered for the destruction of the house the plaintiff owner would first be given an adequate opportunity to repair it and place it in a sanitary condition.

The practical effect of that part of the ordinance, which authorizes the commissioner of health to condemn a building as unfit for human habitation, is to declare such building to be a public nuisance. Municipal corporations have a wide discretion in declaring certain conditions to constitute a public nuisance. *Sullivan v. Los Angeles* (1953), 116 Cal. App. (2d) 807, 254 Pac. (2d) 590; *Rowe v. Pocatello* (1950), 70 Idaho 343, 218 Pac. (2d) 695; 6 McQuillin, Mun. Corp. (3d ed.), p. 578, sec. 24.63; 1 Antieau, Mun. Corp. Law, p. 296, sec. 6.01. The test of the validity of such an ordinance is not whether the proscribed condition constituted a public nuisance at common law. Rather it is whether there is any reasonable basis which will justify such a declaration in the exercise of the discretion vested in the legislative branch of the municipal government. 6 McQuillin, Mun. Corp. (3d ed.), p. 606, sec. 24.82.

We approve of the statement of the Florida supreme court, "It is generally recognized that anything which is detrimental to health or which threatens danger to persons or property within the city may be retarded and dealt with by the municipal authorities." *Miami Beach v. Texas Co.* (1940), 141 Fla. 616, 630, 194 So. 368, 374, 128 A. L. R. 350. We also deem apposite the following declaration by a Texas court: "For a nuisance to be a public one, it need not affect the whole community; but it is public if

injury or annoyance affect the people of some local neighborhood, or are occasioned to such part of the public as come in contact with it." *Stoughton v. Fort Worth* (Tex. Civ. App. 1955), 277 S. W. (2d) 150, 153.

That the condition giving rise to the declaration of it as a nuisance arises after the adoption of a valid ordinance, and in defiance of it, is a material factor to be considered. *Fidelity Trust Co. v. Downing* (1946), 224 Ind. 457, 68 N. E. (2d) 789.

Here the legislature conferred upon the city wide powers to act with respect to "the health, safety, and welfare of the public." Sec. 62.11 (5), Stats. Pursuant to such power the city has enacted a valid housing ordinance which required all buildings used for living or sleeping purposes to be maintained in a condition that would not impair the health and safety of the occupants. Such ordinance clearly had as its objective the protection of public health and safety. In certain restricted situations, where the violations of the ordinance are serious enough, power is vested in the city commissioner of health to condemn the offending building as unfit for human habitation. From these facts we deem it necessarily follows that such an offending building so condemned does constitute a public nuisance, having been determined to be so by the necessary implications of the ordinance. The continuance of such an unabated violation has sufficient reasonable relationship to the public health and safety to warrant such a determination, and to sustain its validity.

The plaintiffs do not complain of any procedural lack of due process in the application of the ordinance to their property. It would be most difficult to substantiate such a contention in view of the adequate time extended to the plaintiffs to remedy their violations, and the opportunity to have had a hearing before the commissioner on the merits if they had elected to do so.

We find no denial of due process in the threatened application of the enforcement procedures of the ordinance to the plaintiffs or their property.

*By the Court.*—Judgment affirmed.