993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David J. HELDSTAB Plaintiff-Appellant,
v.
CITY OF MILWAUKEE, Lee C. Jensen, Commissioner, Department
of Building Inspection, Grant Langley, City
Attorney, et. al., Defendants-Appellees.
 No. 92-2151.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 20, 1993.*
Decided May 10, 1992.
 
 Before COFFEY, FLAUM and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 David J. Heldstab, the owner of several two- and three-family residences, and the City of Milwaukee have engaged in a long battle over the City's efforts to secure Heldstab's compliance with its building code. In 1984, Lee C. Jensen, Commissioner of the Department of Building Inspection ("DBI"), ordered that Heldstab comply with certain provisions of the code at two of his premises. Heldstab's appeal of this order was denied in 1985. In 1987, the DBI notified Heldstab that he was still in violation of the code and that he should rectify the situation. In January of 1989, the DBI sent a letter to Heldstab warning that he faced a monetary penalty for failure to comply with the code. Heldstab brought suit under 42 U.S.C. § 1983 seeking declaratory, monetary, and injunctive relief.
 
 
 2
 In a letter dated July 27, 1989, Heldstab wrote to Jensen notifying him that he would no longer allow any warrantless searches on his properties. On November 30, 1989, a DBI inspector, Ron Voss, tried to inspect the interior of one of Heldstab's buildings. Because Voss did not have a search warrant, Heldstab refused to permit the inspection. Voss then conducted an "exterior fire inspection," during the course of which Voss walked on Heldstab's property. As a result of the inspection, Voss sent Heldstab an Order to Correct Condition of Premises ("Order to Correct"), which cited several violations of the building code. One of the violations Voss cited was failure to comply with Ordinance 275-32-3a, which requires that all wood trim be protected with paint or another approved material.
 
 
 3
 In January of 1990, Heldstab filed an amended complaint. First, he challenged the constitutionality of Milwaukee Ordinances 250-2(2) and 200-19, which, respectively, authorized inspections for code violations and provided for penalties for such violations.[1] Second, he claimed that Ordinance 275-32-3a, which requires that exterior wood trim be painted, violated his right to free speech. He also claimed that the City applied this provision discriminatorily. Third, he contended that Ordinance 200-17, which governs appeals from decisions of the DBI, deprived him of due process during his 1985 appeal. Finally, he claimed that Voss' exterior fire inspection violated his right under the Fourth and Fourteenth Amendments to be free from unreasonable searches. R. 9. The parties filed cross-motions for summary judgment. The district court referred the matter to a magistrate judge, who recommended granting summary judgment in favor of the defendants. R. 22. The district court adopted and followed this recommendation. R. 24-25. Heldstab filed a timely notice of appeal. R. 26.
 
 ANALYSIS
 
 4
 A. Challenge to Milwaukee Ordinances 250-2 and 200-19
 
 
 5
 At the time relevant to this suit,[2] Milwaukee Ordinance 250-2(2)(b) authorized the Commissioner of Building Inspection to "inspect all buildings, structures and premises, except the interior of private dwellings" for code violations. The ordinance also provided that an annual fee shall be charged to the property owner for the required periodic inspections. Ordinance 200-19 provided for fines and imprisonment of up to six months for violations of the code.
 
 
 6
 In Count I of Heldstab's complaint, he claimed that 250-2 and 200-19 were unconstitutional. He relied on Camara v. Municipal Court, 387 U.S. 523 (1967), and Marshall v. Barlow's, Inc., 436 U.S. 307 (1978). The magistrate distinguished Camara and Barlow's on the basis that they both involved interior inspections, whereas in this case, Voss made solely an "exterior fire inspection." The magistrate concluded that Heldstab had not alleged any violation of his right to a reasonable expectation of privacy protected by the Fourth and Fourteenth Amendments.
 
 
 7
 Although on appeal Heldstab continues to challenge the constitutionality of 250-2 and 200-19, he merely reiterates his reliance on Camara. As noted by the magistrate, however, Camara invalidated the warrantless administrative search of the interior of a building. Ordinance 250-2(2)(b) authorizes searches of buildings except for the interiors of private dwellings. Thus, it would appear that 250-2(2)(b) does not apply to situations like the one in Camara, yet Heldstab fails to explain why he thinks it does. Without any sort of explanation, his mere citation to Camara is insufficient. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.) (perfunctory and undeveloped arguments are waived), cert. denied, 112 S.Ct. 141 (1991).
 
 
 8
 Heldstab also contends that the two ordinances are unconstitutional because, under Barlow's, "enforcement inspectors must operate pursuant to a detailed administrative plan derived from specific neutral criteria," and the defendants have admitted that they have no such plan. Br. 7. The context of these words is important. Barlow's referred to "an administrative plan ... derived from neutral sources" as an example of what would satisfy probable cause for the issuance of an administrative search warrant. Barlow's, 436 U.S. at 321. Because no search warrant was issued in this case, this passage does not apply. To the extent that Heldstab challenges the warrantless exterior inspection, we consider this in part D, infra.
 
 
 9
 Heldstab raises several other issues: whether his buildings are open to the public, whether the City actually inspects living quarters without a warrant, and whether the defendants had threatened Heldstab with prosecution. Heldstab fails to explain how these issues pertain to the constitutionality of the two ordinances in question here, so we do not address them. Berkowitz, 927 F.2d at 1384.
 
 B. Challenges to Milwaukee Ordinance 275-32
 
 10
 Milwaukee Ordinance 275-32-1 provides in part that "[t]he general welfare of the residents of the city requires that the exterior of structures ... shall be kept in a good state of repair ... to prevent the blighting of city neighborhoods." To accomplish this purpose, the ordinance specifies that "[a]ll exterior wood surfaces shall be reasonably protected from the elements and against decay, by paint or other approved protective coating applied in a workmanlike manner." 275-32-3a. Heldstab claims that this ordinance violates his rights in several of ways.
 
 1. Free Speech
 
 11
 Heldstab argues that his choice not to paint the wood trim on his building is a form of speech and that 275-32-3a violates his rights under the First Amendment, as applied to the states by the Fourteenth Amendment. The magistrate assumed for the sake of argument that Heldstab's decision not to paint his exterior wood surfaces was a form of speech but concluded that under the analysis of symbolic speech set forth in United States v. O'Brien, 391 U.S. 367 (1968), the ordinance did not violate his First Amendment rights. We agree.
 
 
 12
 Heldstab insists that O'Brien does not apply here, claiming that this was a case of "pure speech," i.e., there were no nonspeech elements involved in his refusal to paint his building. He claims that "the very deliberate nature of his expression renders it pure [speech]." Br. 11. We do not agree. Actions can be just as deliberate as speech. Moreover, the Supreme Court has rejected the view that "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." O'Brien, 391 U.S. at 376. In our view, painting (or not painting) a building is within the realm of action, though, for the sake of argument, we assume in this case that it also can be communicative. Regardless, the ordinance passes constitutional muster.
 
 
 13
 In O'Brien, the Supreme Court considered whether, consistent with the First Amendment, a protestor could be prosecuted for the symbolic act of destroying his draft card. Under the Court's analysis, when both speech and nonspeech elements are combined in the same course of conduct, an infringement on the speech element is justified if there is a sufficiently important governmental interest in regulating the nonspeech element. Id. In cases of symbolic speech, a restriction is valid if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. Id. at 377.
 
 
 14
 Applying this analysis here, we note that the City has the constitutional power to promulgate regulations to enhance the appearance of the City. Berman v. Parker, 348 U.S. 26, 33 (1954). We believe that Ordinance 275-32-3a, by requiring that exterior wood surfaces be painted, furthers the substantial governmental interest in maintaining the appearance of the City. All the Justices in Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981), agreed that a city has a substantial interest in its appearance. See id. at 507-08 (plurality); id. at 530 (Brennan, J., concurring); id. at 551 n. 23 (Stevens, J., dissenting in part); id. at 560-61 (Burger, C.J., dissenting); id. at 570 (Rehnquist, J., dissenting). Heldstab maintains that there is no evidence that his decorative choice is unsightly. There is evidence, however, that his building had peeling paint. R. 9, exh. H, p. 9. Heldstab also argues that the ordinance is underinclusive because it fails to prohibit aesthetically displeasing paint colors or combinations of colors. However, a city need not address all aesthetic problems at the same time. See id. at 531 (Brennan, J., concurring). Third, the governmental interest in avoiding blight is unrelated to the suppression of free expression. No Milwaukee ordinance prohibits Heldstab from expressing his belief that he has a right to decorate or not to decorate his building, nor is he prevented from advocating the "scientific concept of Natural Weathering." He simply may not practice natural weathering on his buildings in Milwaukee. And finally, the restriction on the expression of different aesthetics is narrowly tailored to ensuring the appearance of the City. Thus, we conclude that 275-32-3a does not infringe upon Heldstab's rights under the First and Fourteenth Amendments.
 
 2. Equal Protection
 
 15
 According to Heldstab, the City enforces 275-32-3a in a discriminatory manner. First, he argues that 275-32-3a is applied to non-owner-occupied buildings such as his, but not to owner-occupied buildings. The magistrate reasoned that Heldstab had not presented any facts in support of his argument that the ordinance is applied unequally. In his motion for summary judgment, Heldstab supported this claim by reference to the defendants' answer to an interrogatory. R. 14, exh. I. There, the defendants admitted that single-family residences and owner-occupied duplexes are not routinely inspected by the DBI. This does not support Heldstab's assertion that the painting requirement is enforced discriminatorily.
 
 
 16
 Heldstab also argues that Ordinance 275-32-3a is applied unequally because houses with cedar shingles or rough hewn pine or fir on the outside are not required to paint these surfaces. The magistrate did not discuss this claim. Heldstab's affidavit accompanying his motion for summary judgment supports this argument. R. 14, para. 15. The defendants did not rebut this evidence in their opposition. See R. 16-19. Therefore, we must accept as true for the purposes of this appeal that the ordinance is enforced in the fashion claimed by Heldstab. We are unable to conclude that this unequal application of the ordinance passes even the rational basis test because the defendants have offered absolutely no justification for this unequal treatment. They did not even address Heldstab's equal protection argument. We will not construct an argument for them.[3] United States v. Cherif, 943 F.2d 692, 702 (7th Cir.1991), cert. denied, 112 S.Ct. 1564 (1992). We cannot say that the defendants are entitled to judgment as a matter of law, and therefore the summary judgment, to the extent it dismissed this equal protection claim, is reversed.[4]
 
 3. Enforcement Without a Neutral Plan
 
 17
 Heldstab claims that 275-32-3a is unconstitutional because it was not applied pursuant to an administrative plan containing specific neutral criteria as required by Marshall v. Barlow's, 436 U.S. 307, 321 (1978). As noted previously, the passage from Barlow's upon which Heldstab focuses concerns the criteria for issuing an administrative search warrant. See supra, part A. No search warrant was issued in this case. To the extent that Heldstab's challenge is to the very fact that no search warrant was issued, we address this issue in part D, infra.
 
 4. Stare Decisis
 
 18
 Heldstab argues that two state cases, City of Columbus v. Stubbs, 162 S.E.2d 370 (Ga.1968), and Boden v. City of Milwaukee, 8 Wis.2d 318 (1959), compel this court to conclude that Ordinance 275-32-3a bears no rational relation to the promotion of public health, safety, or welfare. Although this argument is highly dubious on its face, we need not even consider it because the ordinance clearly bears a rational relation to the legitimate governmental interest of preserving the appearance of the City, which is one of its avowed purposes.
 
 C. Challenge to Milwaukee Ordinance 200-17
 
 19
 Ordinance 200-17 establishes a Standards and Appeals Commission ("SAC"). Appeals from decisions of the Commissioner of Building Inspection can be taken to the SAC, which has authority to consider variances for hardship. Heldstab argues that Ordinance 200-17 violates his right to due process under the Fourteenth Amendment. He claims that the average citizen has no chance of prevailing in an appeal to the SAC. He also claims that Commissioner Jensen and his agents engaged in ex parte communications with the SAC. Further, based on certain comments made by members of the SAC, he charges them with bias. Finally, he argues that Ordinance 200-17 fails to afford due process under the test stated in Mathews v. Eldridge, 424 U.S. 319 (1976).
 
 
 20
 Heldstab appears to argue that he was entitled to a hearing before the City issued the "Order to Correct" in 1984. We disagree. Certainly, Heldstab has a property interest in his building, but the mere issuance of the "Order to Correct" did not deprive him of that property interest in any way. Thus, under Mathews, no prior hearing was required.
 
 
 21
 Heldstab also challenges the fairness of the hearing that he received after the issuance of the "Order to Correct." Although neither party cites any authority regarding whether enforcement of the "Order to Correct" would deprive Heldstab of a property interest, we will assume that it would, and we proceed to consider whether Heldstab received a fair hearing.
 
 
 22
 Heldstab claims that no citizen has ever prevailed in an appeal to the SAC. He further claims that the defendants have admitted this proposition by their failure to deny it in their answer. Heldstab is wrong. Their answer specifically denied this allegation. R. 11, p. 6. Indeed, it was only the defendants who offered any evidence on this issue at the summary judgment stage. Philip Stollenwerk averred that, as secretary for the SAC, he has observed applicants for variances succeed in obtaining the requested relief in excess of 80% of all cases. R. 19. Heldstab argues in his brief on appeal that all of these variances went to big contractors and engineering firms, not average citizens, yet there is nothing in the record to support this assertion. Finally, we do not agree with Heldstab's claim that a variance would not protect his property interest. He fails to explain his reliance on Daniels v. Williams, 474 U.S. 327 (1986), and we find no support in it for his position.
 
 
 23
 Heldstab also argues that members of the SAC were biased against him. He cites several references by members of the SAC to a building inspector as "our" inspector. He also points out that, in response to his suggestion that he might not let inspectors in his building to check for smoke alarms, Commissioner Bentley said, "We'll get a warrant." We have reviewed the entire transcript of the hearing before the SAC. Heldstab asked for a variance to allow his building to weather naturally, but presented no evidence of hardship. Moreover, he presented no evidence in support of his claims that the other code violations cited by the inspector had been corrected. It seems clear that his appeal was denied for these reasons. We do not believe that the few offhand remarks cited by Heldstab would enable a jury to return a verdict in his favor on the issue of bias. Hence, summary judgment in favor of the defendants was appropriate on the claim of bias. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).
 
 
 24
 We also reject Heldstab's other due process claims. He claims there were improper ex parte communications to the SAC. With respect to Commissioner Jensen, the one page of deposition testimony that Heldstab attached to his motion for summary judgment does not indicate whether or not the communications mentioned therein were ex parte. R. 14, exh. H. As for Philip Stollenwerk, his unrebutted affidavit states that he never made any ex parte communication to the SAC. R. 19.
 
 
 25
 Finally, Heldstab states that summary judgment is precluded by the magistrate's failure to address his charges of public fraud against the defendants. Heldstab presents no argument on this point, so he has abandoned it. Berkowitz, 927 F.2d at 1384.
 
 
 26
 D. The Warrantless Search of the Exterior of the Building
 
 
 27
 Finally, Heldstab argues that his Fourth Amendment rights were violated by Voss' warrantless inspection of the exterior of the building. Our analysis under the Fourth Amendment must focus on whether Heldstab enjoyed a " 'constitutionally protected reasonable expectation of privacy.' " California v. Ciraolo, 476 U.S. 207, 211 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). As the Court noted in Katz, "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz, 389 U.S. at 351. The exterior of a home is generally something that is knowingly exposed to the public. Nothing in the record suggests otherwise in this case. Voss stated in his affidavit that he observed no "No Trespassing" signs on the property. No member of the public would have been deterred from walking along the side service walks, which is where Voss walked. Thus, Heldstab did not manifest an actual expectation of privacy with regard to the exterior of his building; but even if he secretly had one, it is not one that is objectively reasonable. Ciraolo, 476 U.S. at 215.
 
 
 28
 Heldstab nevertheless contends that he did have a reasonable expectation of privacy because, prior to Voss' inspection, he had sent a letter to Commissioner Jensen expressly denying permission to come onto his property without a warrant to perform inspections. R. 9, exh. k. Heldstab's letter clearly manifested an intention to keep the Commissioner and his agents off of his property. However, it also acknowledged that future searches might be "performed from the public street or sidewalk or alley." We do not believe that the letter gave Heldstab a reasonable expectation of privacy. We conclude that the warrantless search of the exterior of Heldstab's building did not violate his rights under the Fourth Amendment.
 
 CONCLUSION
 
 29
 We reverse the summary judgment in favor of the defendants on Heldstab's claim that the defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by enforcing Ordinance 275-32-3a against his buildings but not against buildings with cedar shingles and rough hewn pine or fir on the outside. In all other respects, we affirm the summary judgment.
 
 
 30
 AFFIRMED in part, REVERSED in part.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 The amended complaint also challenged Ordinance 250-2(1)(a). Becuase this provision uses substantially similar language to describe the authority of the fire chief to enter buildings, our analysis of 250-2(2) applies to this provision as well
 
 
 [2]
 It appears that these ordinances may have been either amended or repealed after the briefs were filed in this case. Heldstab's challenges to them is not moot because he was assessed a $25 inspection fee for the "exterior fire inspection."
 
 
 [3]
 There is evidence in the record that suggests a possible justification for the different treatment of cedar singles (supposedly they will not rot without paint, see R. 9, exh. H, p. 9), but the defendants do not make this argument. In addition, this argument still fails to explain the differing treatment for pine and fir
 
 
 [4]
 This case demonstrates the folly of ignoring the opposition's arguments. The defendants are fortunate, however, that our reversal of the summary judgment in their favor on this particular claim does not necessarily mean that this issue will go to trial. On remand, when the record is sufficiently developed, the defendants, after examining the law and the evidence, may choose to renew their motion for summary judgment with respect to this claim. Of course, we express no opinion on the possible merit of any such motion