## CITY OF AMARILLO V. LOWELL STAPF.

No. 6812.   Decided February 3, 1937.
Rehearing overruled March 3, 1937.
(101 S. W., 2d Series, 229.)

*Underwood, Johnson, Dooley & Huff,* of Amarillo, for appellants.

The ordinance of the City of Amarillo prohibiting foundries in what is designated as the first manufacturing zone of said city is valid and the building inspector of said city had no authority to issue a permit for that purpose. Nessel Patent Holding Co. v. Frederics, 261 Fed. 780; Scott v. Champion Building Co., 28 S. W. (2d) 178; 30 Tex. Jur. 159.

*Morgan, Culton, Morgan & Britain,* of Amarillo, for appellee.

On the validity of the ordinance. Nectow v. Cambridge, 277 U. S. 183, 72 L. Ed. 842, 48 Sup. Ct. 447; Dobbins v. Los Angeles, 195 U. S. 223, 49 L. Ed. 169, 25 Sup. Ct. 18; Spann v. City of Dallas, 111 Texas 350, 235 S. W. 513.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The certificate of the Court of Civil Appeals is quite lengthy, and we think proper answers may be made to the questions propounded from consideration of a condensed statement of the material facts.

The City of Amarillo has adopted a comprehensive zoning ordinance in accordance with the Act of 1927, known as Chapter 283 of the Acts of the 40th Legislature, and shown as Articles 1011a to 1011j, inclusive, of Vernon's Annotated Texas Civil Statutes. The substantial provisions of the law are set out in the opinion of the Supreme Court in the case of Lombardo v. City of Dallas, 124 Texas 1, 73 S. W. (2d) 475. The zoning ordinance adopted by the governing body of the city is the uniform ordinance which has been adopted within recent years in many of the American States, and the general terms of which are set out in the opinion in the Lombardo case. The constitutionality of the general ordinance is not questioned, nor is any question raised as to its proper enactment.

The ordinance in question was adopted prior to April, 1932, and, among other districts, created the "first manufacturing district" and the "second manufacturing district," enumerating the various buildings and uses permitted in these districts. In April, 1932, appellee Stapf was operating a machine shop at 1211 Lincoln Street, immediately across the alley from 1210 Johnson Street. Both of these places are within the first manufacturing district created by the zoning ordinance. At that time there was a small foundry located at 1505 Johnson Street, also within said first manufacturing district. Apparently the operation of this foundry had been discontinued, because at that time it was about to be sold under bankruptcy proceeding. Appellee conceived the idea that the foundry might profitably be operated in connection with his machine shop, if the same were located near the machine shop, and both were conducted under one management. On April 22, 1932, he requested of the city manager a permit to move the foundry from 1505 Johnson Street and to locate same at 1210 Johnson Street. The zoning ordinance of the city provides that same shall be adminstered by the building inspector under the direction of the city manager, in accordance with the provisions of the city charter. The city manager gave appellee a note addressed to the building inspector, which note read as follows: "It is o. k., it seems to me, for a permit to be issued for a foundry at 13th and Johnson Streets." Relying upon this action of the city manager, appellee purchased the foundry at 1505 Johnson Street, paying a substantial sum of money therefor, and made arrangements for a lease of the premises at 1210 Johnson Street, where he proposed to construct the foundry and store his scrap iron and junk materials. A permit was issued by the building inspector on June 2, 1932. On June 3, 1932, the building inspector cancelled this permit, "subject to a hearing before the Appeal

Board" to be held on June 18, 1932, and on June 6, 1932, notified appellee in writing of this action, requesting him to appear before the Appeal Board. This action on the part of the building inspector was prompted by a protest which residents in the vicinity of 1210 Johnson Street had lodged with him immediately after being advised that the permit had been issued, and by reason of the fact that the building inspector had concluded that the property at 1210 Johnson Street was classified as in the first manufacturing district, while the foundry which plaintiff desired to erect properly belonged in the second manufacturing district, as defined by the ordinance.

On June 22, 1932, there was a hearing before the "Board of Adjustment" provided for in the zoning ordinance, having the powers and authority given by Article 1011g of the Act above mentioned. It appears that the question before the board at that time, as shown by the minutes, was, "where foundries should be located, whether in the first or second manufacturing district; the zoning ordinance does not define where foundries shall be erected." It does not appear that appellee was present at this meeting, but no official action was taken. There was a formal meeting of the board on July 8, 1932, in which appellee participated, and after a full investigation the board entered an order as follows:

"After considerable discussion it was moved and unanimously carried that foundries be designated in the second manufacturing district in the zoning ordinance, and that a permit be denied for the erection of a foundry at 1210 Johnson Street."

No further action appears to have been taken by any one until January 25, 1933, when the City Commission had a hearing and entered an order as follows:

"The purpose of this meeting was for the final decision of the City Commission on whether or not the zoning map should be changed to designate the property at 1210 Johnson Street second manufacturing district instead of first manufacturing district. After consideration it was moved by Commissioner Vernon, seconded by Commissioner Smith, and unanimously carried, that the area under discussion at 1210 Johnson Street should not be changed from its present classification, which is first manufacturing district."

Appellee prosecuted no appeal by certiorari, as provided for in Article 1011g of the statute, which article was made a part of the zoning ordinance.

Appellee brought this suit in the district court against the

City of Amarillo, its mayor, the city commissioners and against the building inspector and city manager. The suit was for an injunction to restrain the defendants (appellants) from interfering with appellee in the construction of his building at 1210 Johnson Street, and in the operation of a foundry at that place. Briefly, appellee made and is asserting here three contentions:

(a) That on account of his reliance upon the action of the city manager in advising him that there was no objection to the issuance of a permit for the construction and operation of a foundry at 1210 Johnson Street, and his expenditure of money in purchasing the foundry and in obtaining the lease for the property, the building inspector, the Board of Adjustment and the city and its officials were estopped from revoking the permit issued to him.

(b) That the permit having been issued by the building inspector he and the Board of Adjustment were without power to revoke same.

(c) That if for any reason he has in fact no rights under the permit, in so far as the zoning ordinance of the city prohibits the building and use of a foundry at 1210 Johnson Street, within said first manufacturing district, such ordinance is unreasonable, arbitrary and discriminatory, and is void. In connection with this contention he claims that the city permits other buildings and businesses of a less objectionable character to be located within said first manufacturing district.

The district court overruled the plea in abatement filed by the city, predicated upon the proposition that appellee should have prosecuted an appeal from the action of the Board of Adjustment by certiorari, and entered its order directing the city and its officials to permit appellee to construct his foundry at 1210 Johnson Street, and restraining them from interfering with appellee in the construction and operation of a foundry at that location.

The Court of Civil Appeals has certified to the Supreme Court the following questions:

"(1) After Stapf had been assured that the permit would be issued, and relying thereon had purchased the foundry and perfected arrangements to lease the lot, and after the permit had been issued, was the attempted revocation thereof illegal and void?

"(2) After the revocation of the permit, was the appellee

Stapf required by the zoning law to prosecute his appeal from the action of the city authorities by certiorari to the court or could he institute this independent action?

"(3) Does the statute and the ordinance enacted thereunder invest the Building Inspector and Board of Adjustment with judicial powers in violation of the Constitution?"

1 We answer the first question in the negative, for two reasons. In the first place, appellee set out in his pleadings those portions of the zoning ordinance designating the buildings and uses permitted in the first manufacturing district. We think it clear that foundries were classified in the second manufacturing district. It must be assumed that the City Commission intended to classify all legitimate uses, and it is not contended that foundries were placed in any district other than either the first or second manufacturing district. In our opinion, it is plain that they were not included in the first district. The only uses permitted in that district which could be said to include foundries are "railroad shops," "railroad roundhouse," and "manufacture or industrial operation of any kind not heretofore listed, and exclusive of any use as a second manufacturing use in paragraphs 2 to 5 inclusive of Section 8." As strongly indicating that foundries were not included in this district is the following designation: "Bulk storage in the open of any material, except hides, junk, scrap iron, scrap paper or rags." It is undisputed that appellee contemplated the accumulation and storage of scrap iron in the open in connection with the proposed foundry. Among the uses permitted in the second manufacturing district were the following: "Iron or pipe works"; "scrap iron or junk storage"; "any manufacturing or industrial process not heretofore listed, including any industrial process emitting dust, smoke, odor, fumes, noise or vibration." This language of the ordinance enumerating the buildings and uses permitted in the second district is clearly susceptible of a construction which will include foundries therein. In view of the fact that we must assume that the City Commission intended to classify all legitimate uses, we do not think the rule of ejusdem generis should be strictly applied. We hold, therefore, that the original zoning ordinance designated foundries in the second manufacturing district, and consequently a valid permit could not be issued by the building inspector for building of a foundry in first manufacturing district.

2 It being true, then, that the ordinance did not permit the location of a foundry at 1210 Johnson Street in the first manufacturing district, but permitted such a use only in the second

manufacturing district, it follows that the action of the building inspector in granting the permit was unauthorized, and the permit was void. Under such permit appellee could acquire no rights, and no estoppel would be created. Galanty v. City of Maysville, 176 Ky. 523, 196 S. W. 169; City of Maplewood v. Provost, 25 S. W. (2d) 142. In this last case the court very fittingly stated that "the building inspector has no power, by issuance of a permit, to amend or repeal the ordinance."

In the next place, Article 1011g of the statute, which was adopted by the ordinance, provides that any person aggrieved or any officer, department, board or bureau of the municipality affected by any decision of the administration officer, may take an appeal to the Board of Adjustment. In such event, all proceedings in furtherance of the action appealed from shall be suspended. It is further provided that on an appeal the Board of Adjustment may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken. There was undoubtedly the right to take an appeal in this instance, even if it could be said that an appeal was not taken. Appellee acquired the permit issued to him subject to the right of an appeal and subject to the action of the building inspector being set aside. It appears that after the granting of the permit appellee expended no money or took any action thereunder prior to the notice of cancellation, or for that matter, at any time thereafter. All expenses and obligations incurred by him appear to have been incurred in reliance upon the statement of the city manager on April 22, 1932, long prior to the issuance of the permit itself. To permit an estoppel simply because the recipient of a permit may act upon some promise of the administrative officer, or even upon the permit itself prior to the expiration of the time for an appeal to the Board of Adjustment, would destroy the right of appeal. Regardless, then, of the power of the building inspector to cancel the permit, if it be assumed that it had any validity, or conferred any rights, certainly the Board of Adjustment had the power to cancel same. If it were void, the action of the Board of Adjustment could not add to or take from its force or effect. State v. Kansas City, 325 Mo. 95, 27 S. W. (2d) 1030.

3 We answer the second question in this manner: Under the special and peculiar facts of this case appellee was not required to prosecute an appeal from the action of the Board of Adjustment by certiorari, as prescribed by the statute and the ordi-

nance, but could institute this independent action. This answer is predicated upon the fact that in the last analysis the only question really involved in this proceeding is the validity of the zoning ordinance itself, in so far as it classifies foundries in the second manufacturing district and prohibits the construction and operation of a foundry at 1210 Johnson Street. The question of whether or not an ordinance prohibiting the construction of a particular kind of building, or preventing a particular kind of use, at a particular location, is unreasonable, arbitrary or discriminatory, is a question peculiarly within the province of the courts. An owner of property is entitled to direct access to the courts for the purpose of litigating such question, regardless of whether the zoning ordinance has made provision therefor or not. Little Rock v. Pfeifer, 169 Ark. 1027, 277 S. W. 883.

In addition, we are of the opinion that the statute under which the zoning ordinance in this instance was adopted does not make provision for such a question reaching the courts by certiorari. Without setting out the provisions of the law fully, or going into an elaborate discussion of the question, we state it as our conclusion that the Board of Adjustment provided for by Article 1011g is created primarily for the purpose of varying or modifying zoning regulations in particular cases as the exigencies of justice and the circumstances may require. The statute providing for the appointment of such a board and declaring the function for which it is created declares:

"Such local legislative body may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this Act may provide that the said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."

Again, in said article the board is given power:

"To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

In the exercise of these powers, it is obvious that the Legislature has undertaken to prescribe an exclusive method of ap-

peal from the action of the Board of Adjustment; this method being by certiorari. It is not necessary for us to undertake here to indicate just to what extent a board of adjustment may go in making special exceptions, or the nature of such exceptions as may legally and properly be made, because it is obvious that in this instance no effort was made on the part of appellee to have the Board of Adjustment make an exception to the terms of the ordinance, owing to peculiar facts and circumstances applicable to the premises in question. It is further obvious that the Board of Adjustment did not consider the question of making an exception on account of unnecessary hardships, or other equitable reasons, but sought, first, to designate foundries in the second manufacturing district, and then refused, or cancelled, appellee's permit because the property at 1210 Johnson Street was in the first manufacturing district. It is further shown that when the matter was carried before the City Commission, that body passed upon the sole question as to whether or not the property at 1210 Johnson Street should be changed from the first manufacturing district to the second manufacturing district, and unanimously voted "that the area under consideration at 1210 Johnson Street should not be changed from its present classification which is first manufacturing district." We may say here that this action of the City Commission clearly shows it was of the opinion that under the general zoning ordinance foundries were permitted only in the second manufacturing district. The Commission did not consider the question of changing the location of foundries, but only the designation of the property at 1210 Johnson Street from the first to the second district. It also appears that when the building inspector first issued the permit he erroneously construed the ordinance as permitting a foundry at 1210 Johnson Street, but on further consideration concluded it was permitted only in the second district; and this partly prompted his cancellation of the permit, subject to the hearing before the Board of Adjustment.

It is appropriate to observe that the order of the Board of Adjustment of July 8, 1932, in so far as it attempted to designate for the first time foundries in the second manufacturing district was void, because of an attempt to exercise legislative power expressly conferred by Article 1011b upon the legislative body of the city. State v. Kansas City, supra. However, as this action became wholly unimportant so far as the rights of appellee are concerned, it need not be further considered. As indicated above, the act of the board in refusing the permit was within its potential powers, but owing to the fact that the

permit had been originally issued contrary to the law, its action in this regard could not take from or add to the rights of appellee.

We have, then, a proceeding involving no attempt to obtain a variation from, or a modification of, the zoning ordinance, or to obtain an exception to its regulations, hence there was no action of the Board of Adjustment which was appealable by certiorari, as provided for in Article 1011g. The sole question which appellee is in position to rely upon is the question of the invalidity of the ordinance prohibiting the construction of a foundry at 1210 Johnson Street, or the invalidity of the action of the City Commission in refusing to change the classification of said property. We therefore answer the second question in the manner indicated above.

The third question, in the light of what has been said, becomes an abstract question which we are not required to answer. We observe, however, that there is nothing on the face of the statute, which became a part of the ordinance, which indicates a purpose to invest the building inspector or the Board of Adjustment with judicial powers in violation of the Constitution. Numerous decisions have held like provisions in zoning ordinances valid. As shown in the "Law of Zoning" by Metzenbaum, page 252, a board of adjustment fills a much needed purpose, and its action often saves ordinances from being unconstitutional and void. As neither the building inspector nor the board, in this instance, took action which is of controlling importance in the disposition of the case, the constitutionality of the statute and ordinance prescribing their powers is not involved.

Opinion adopted by the Supreme Court February 3, 1937.

Rehearing overruled March 3, 1937.