**PLEMONS–EAKLE NEIGHBORHOOD ASSOCIATION, INC., et al., Appellants,**

v.

**CITY OF AMARILLO, et al., Appellees.**

**No. 07–84–0132–CV.**

Court of Appeals of Texas, Amarillo.

July 2, 1985.
Rehearing Denied July 23, 1985.

Wolfram Law Firm, Walter P. Wolfram, Amarillo, for appellants.

Merril Nunn, City Atty., and Law Offices of Jack Hazlewood, Jack Hazlewood, Amarillo; McWhorter, Cobb & Johnson, D. Murray Hensley, Lubbock, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

This appeal arises from a suit brought by appellants Plemons-Eakle Neighborhood Association, Inc. and Jean Carter against appellees City of Amarillo, E.A. & M.O., Inc. d/b/a Maggie's and Adelia Cox. In the suit, appellants sought to enforce by injunction a prohibitory zoning ordinance, claiming that a previous nonconforming use exception to the zoning ordinance had been abandoned. The trial court refused the relief sought, resulting in this appeal. We affirm the judgment of the trial court.

In five points of error, appellants present three questions for our decision. The first is whether the acts of appellee Cox's sublessee in voluntarily surrendering her liquor license and ceasing operations on the premises effectuated an abandonment of a right to a nonconforming use exception to the city ordinance. The second is whether the issuance of liquor licenses by the Texas Alcoholic Beverage Commission (ABC) pursuant to an order of a Travis County district court, which order was later determined by the Austin Court of Appeals to have been made without jurisdiction, was void. Based on that holding of the Court of Appeals, appellants argue that the liquor licenses, having been issued pursuant to the order of a court having no jurisdiction, were void. Therefore, they reason, any activities conducted under such licenses were void and could not operate to toll the running of a one-year cessation of activities on the premises, which cessation would cause the loss of the nonconforming use exception to the zoning ordinance. The third question is whether the trial court's findings were correct and based upon proper and competent evidence.

To discuss this appeal properly, it is necessary to set out the somewhat complex relevant facts in the case. Appellee Cox is, and was at all relevant times, the owner of the premises which are the subject of this dispute. The premises are improved with a large building which is suitable for the operation of a food service establishment, a bar, a lounge or a tavern. The premises had formerly been operated by Cox and her

husband as a drive-in restaurant called the "Hi-D-Ho" which was very popular with young people. Following the death of her husband, Cox, through her agent Lowenstern Realtors, leased the property to B & B Vending Company (B & B). B & B subleased the premises to G.R.N.C., Inc. for the operation of a bar, tavern or lounge.

Prior to September 8, 1981, the property and area had a zoning classification of "LC" (Light Commercial) which permitted the operation of a bar, tavern or lounge. On October 9, 1980, various liquor licenses were issued to G.R.N.C., Inc. d/b/a Grumpy's. On July 15, 1981, these licenses were cancelled by the ABC. From July 18, 1981 until June 14, 1982, the premises were vacant.

On September 8, 1981, the property was rezoned "PD" (Planned Development District No. 130). The effect of this reclassification was to prohibit the operation of a bar, tavern or lounge except as a nonconforming use. In September 1981, B & B subleased the premises to Barbara Dean. On September 30, 1981, Dean applied to the ABC for requisite liquor licenses to operate a bar, tavern or lounge under the name of "The River." A protest was filed by appellant Carter and, on March 29, 1982, the ABC denied Dean's application.

Dean appealed the adverse ruling of the ABC to a Travis County district court. That court, over a challenge to its jurisdiction, reversed the ruling of the ABC and ordered the issuance of the licenses to Dean. This judgment of the district court was appealed to the Austin Court of Appeals. Parenthetically, we note that the applicable statute does not permit the suspension of such a court order pending appeal. During the pendency of this appeal, and in pursuance of the court order, the ABC issued the liquor licenses to Dean on July 14, 1982.

Cox's uncontroverted testimony was that B & B had permission to sublease the premises. The uncontroverted testimony of Ricki Eaves, the representative of E.A. & M.O., Inc., was that he, by some kind of lease purchase agreement, agreed to pay Dean $19,000 for "her equipment and to be able to get the building from her so she would turn in her liquor license" and that "she would cease her operation" and he "would take it over." On September 7, 1983, E.A. & M.O., Inc. d/b/a Maggie's (Maggie's) applied to the ABC to transfer its liquor licenses from another of its locations in Amarillo to the premises involved here. Appellant Plemons-Eakle Neighborhood Association, Inc. filed a protest to this application. On September 14, 1983, Dean voluntarily surrendered her licenses to the Amarillo office of the ABC. The protestor did not appear at the Austin hearing on the application to transfer liquor licenses and on September 28, 1983, the ABC overruled the protest and granted the application to transfer. The protestor did not appeal from this decision.

On November 15, 1983, the property was heavily damaged by fire. Because of that damage, no bar, tavern or lounge operations were begun on the premises. At the time of the fire, Maggie's had started a "remodeling or refurbishing or some sort of improvement program" on the premises. On November 16, 1983, the Austin Court of Appeals held that the Travis County district court had no jurisdiction to entertain the appeal from the ABC's refusal to issue the Dean licenses. *Carter v. Dean*, 660 S.W.2d 866 (Tex.App.—Austin 1983, no writ).

On January 18, 1984, Cox, through her attorneys, notified B & B that because of the damage to the premises, she elected to terminate the lease. On January 24, 1984, B & B, by endorsement upon the notification, agreed to the termination. According to Cox, at the time of the fire, Eaves was a sublessee of B & B. In "the middle of December, or the first of January," Cox was contacted by Eaves and an "arrangement" worked out between them.

On January 27, 1984, the City of Amarillo issued a building permit to Ricki Eaves, as owner, and John Aboud, as contractor, apparently for the purpose of restoring the premises. The instant suit was filed on February 3, 1984 with service of citation

made on February 10, 1984. On February 15, 1984, an electrical permit was issued to Patrick Electric for restoring electricity to the premises. On February 21, 1984, a certificate of occupancy for up to 87 people was issued by the City, and the lounge has been in operation since that time.

Relevant portions of P.D. 130 passed on September 8, 1981, are as follows:

*Land Use*

\* \* \* \* \* \*

Existing land uses that would not be allowed to develop under a "GR" general Retail classification shall be considered as non-conforming uses. Any non-conforming use that is abated for more than one (1) year, shall then comply with the "GR" zoning district requirements.

\* \* \* \* \* \*

*Non-Conforming Uses*

All land uses made non-conforming by this Planned Development shall comply with the requirements of Chapter 26, Zoning, Section 26–24 of the Amarillo Code of Ordinances.

Amarillo, Tex., Code of Ordinances § 26–24(F) provides:

Whenever a nonconforming use is abandoned, all nonconforming rights shall cease and the use of the premises shall henceforth be in conformance to this chapter. Abandonment shall involve the intent of the user or owner to discontinue a nonconforming operation and the actual act of discontinuance. Any nonconforming use which is discontinued for, or which remains vacant for, a period of twelve (12) months shall be considered to have been abandoned.

Appellants advance the proposition that under the facts in this case, there are three possible scenarios which would or could have caused the premises in question to lose its nonconforming status. These are:

[1.] For the user or owner to (1) evidence an intent to discontinue and (2) couple it with an actual act of discontinuance.

[2.] For there to be a discontinuance or vacancy for more than 12 months (at which time it shall be "considered to have been abandoned").

[3.] For the owner or user to have failed to reactivate within 12 months after July 15, 1981 (being the date of the cancellation of the G.R.N.C., Inc. permits).

In their first point, appellants advance the theory that the actions of Dean in surrendering her licenses and ceasing her operations at a time when she was the "user" of the premises were sufficient to constitute an abandonment and loss of a nonconforming right within the purview of § 26–24(F). They argue that the ordinance is sufficiently specific to allow the conduct of the user alone to be sufficient to effectuate the abandonment regardless of any intent of the owner. In support of that proposition, they cite City of *Dallas v. Fifley*, 359 S.W.2d 177 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). While appellees point out certain factors distinguishing the facts in that case from those here existent, for purposes of our discussion, we will assume that appellants' proposition is correct.

Implicit in appellants' statement of their first scenario is the recognition that the discontinuance of a nonconforming use results from the concurrence of the intent to abandon and some overt act or failure to act which carries the implication of abandonment. *See McDonald v. Bd. of Adj., City of San Antonio*, 561 S.W.2d 218, 222 (Tex.Civ.App.—San Antonio 1977, no writ). In its finding of fact number five, the trial court found that at no time had the legal nonconforming use of the property been abandoned by the owner or any of the users. In its finding of fact number eight, the court found that the discontinuance of use by Dean was not an abandonment but "was merely a transfer of rights of tenancy from her" to E.A. & M.O., Inc. The testimony of Ricki Eaves, uncontroverted in this record as to the circumstances of his deal with Dean, is sufficient to justify the trial court's conclusion that Dean's actions were not evidence of an intent to abandon but, indeed, evidenced a

desire of both parties that the nonconforming operations continue. Appellants' first point is overruled.

In their point of error two, appellants present their second scenario. They point out that the evidence establishes that the G.R.N.C., Inc. (Grumpy's) licenses were involuntarily terminated by the ABC on July 15, 1981, and from that time until June 14, 1982, when the Dean licenses were issued by virtue of the Travis County district court order, there was no nonconforming use operation on the premises. The operation from June 14, 1982 until September 14, 1983, the date of the surrender by Dean, was under Dean's licenses. They reason that since those licenses were issued by virtue of what they characterize as a void order of the Travis County district court, they were illegally issued, were void *ab initio*, and conferred absolutely no rights upon the holder thereof. Therefore, they say, the nonconforming use was discontinued for a period in excess of twelve months and, under the ordinance, such nonconforming use must be "considered to have been abandoned."

In support of their position that the order of the ABC granting the Dean license is void, appellants place primary reliance upon the holding in City of *Amarillo v. Stapf*, 129 Tex. 81, 101 S.W.2d 229 (1937). We think that reliance is misplaced. In *Stapf*, a building permit was issued by the City of Amarillo Building Inspector for the placement of a foundry in a zoning district which prohibited foundries. The permit was shortly cancelled and the property owner filed suit to restrain the City, its mayor, the city commissioners, the building inspector and the city manager from interfering with the construction of the foundry. In holding for the defendants, the Court said:

> We hold, therefore, that the original zoning ordinance designated foundries in the second manufacturing district, and consequently a valid permit could not be issued by the building inspector for building of a foundry in first manufacturing district.

*Id.* at 232.

The teaching of *Stapf* is that an act performed without legal authorization is void and confers no right. The holding of the Court might be analogous if it had been the Travis County district court which had actually issued the licenses. However, in its act of issuing the licenses, regardless of the premise upon which the issuance was based, the ABC was clearly acting within its legally authorized powers. Therefore, until such licenses were legally set aside, they continued to be valid. Hence, Dean's operation under the licenses was legal and we find that the trial court did not err in refusing to find them void. Since Dean's operation commenced within the twelve-month period, there was no abandonment of the right to a nonconforming use within the purview of the ordinance. Appellants' point of error two is overruled.

Appellants' third scenario is also based upon their theory that the Dean licenses were void. They say that the G.R.N.C., Inc. permits were involuntarily terminated on July 15, 1981 and, since there was no legal operation until September 18, 1983 when the Maggie's licenses were transferred, any nonconforming use had been abated for more than one year. Since the contemplated use of the premises would not comply with "GR" zoning requisites, the contemplated operations were prohibited by the zoning ordinance. For the reasons expressed above, we do not think the Dean licenses were void and, therefore, no twelve-month abatement period exists.

In summary, appellants' points of error are overruled and the judgment of the trial court affirmed.