

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-25-00406-CV

---

CITY OF ARLINGTON, Appellant

V.

CERKEZI ENTERPRISES, L.L.C., D/B/A EURO CAR TECH, AND ELIO
CERKEZI, Appellees

---

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-350490-24

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

This interlocutory appeal[1] follows the denial of Appellant City of Arlington's combined traditional and no-evidence motion for summary judgment and plea to the jurisdiction (the motion) in a lawsuit dealing with zoning regulations affecting a business owned by Appellees Cerkezi Enterprises, L.L.C., d/b/a Euro Car Tech, and Elio Cerkezi (collectively Euro Car Tech). In three issues, the City argues that the trial court erred by denying the motion, which sought dismissal of Euro Car Tech's claims of inverse condemnation, estoppel, and Texas Local Government Code Section 211.019 violations. Because Euro Car Tech has failed to state a claim waiving the City's governmental immunity, we will reverse and render.

## II. BACKGROUND

### A. The Federal District Court Litigation

This appeal stems from a dispute between the parties relating to property located at 1850 Parks Springs Boulevard in Arlington. Litigation between the City and Euro Car Tech involving the property has been ongoing for several years and started when Euro Car Tech filed suit in federal district court. Ultimately, the federal court

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); *see also Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("If the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature has provided that an interlocutory appeal may be brought.").

dismissed the lawsuit. In making its ruling, the court first summarized the facts giving

rise to the dispute, which facts are also applicable to the subject lawsuit:

> Plaintiff Elio Cerkezi has been operating Euro Car Tech in Arlington, Texas since 2018. From 2018 to 2022, Euro Car Tech sold used cars and conducted major and minor auto repair. None of these uses are ordinarily permitted in a Community Commercial Zoning District—the zoning district in which the property sits. However, the City Council may approve a Planned Development that includes uses not ordinarily permitted in a zoning district. Mr. Cerkezi's property is authorized to be used for (1) minor auto repair, and (2) any use ordinarily permitted in a Community Services zoning district. Thus, the Planned Development for Mr. Cerkezi's property does not permit major auto repair or used car sales.[2]
>
> Before a tenant uses or occupies a premises, the tenant must have a Certificate of Occupancy issued by the Building Official. To get a Certificate of Occupancy, the Building Official must find that the premises comply with the Building Code and the City of Arlington's applicable zoning regulations. However, in this case, an erroneous Certificate of Occupancy was issued in 2015 to the previous tenant of Mr. Cerkezi's property. The Certificate of Occupancy stated that major auto repair is authorized on the property, even though the Planned Development does not permit major auto repair. When Mr. Cerkezi began operating on the property in 2018, he was reissued an erroneous Certificate of Occupancy which again stated that major auto repair is authorized on the property.
>
> From 2018 to 2022, Mr. Cerkezi conducted major auto repair (which the Certificate of Occupancy erroneously said was authorized) and sold used cars (which the Certificate of Occupancy did not say was authorized). In 2022, the State of Texas refused to renew Mr. Cerkezi's license to operate a car dealership since neither the 2018 Certificate of Occupancy nor the Planned Development allow used car sales on the property. When Mr. Cerkezi approached the City about rezoning the

---

[2]The Planned Development was enacted as part of Ordinance 96-111 in 1996, so it had been in effect long before Euro Car Tech began its operations at the location. *See* Arlington, Tex., Ordinance 96-111 (Aug. 20, 1996).

property to allow used car sales, the City discovered that his 2018 Certificate of Occupancy was issued in error and should not have stated that major auto repair was authorized on the property.

Mr. Cerkezi subsequently requested that the Planned Development be modified so that he can continue operating his business. A public hearing was held, in which the City Council considered whether to authorize used car sales and major auto repair on the property. Mr. Cerkezi was present at the meeting and advocated for amending the Planned Development to allow both uses. The City denied his request and issued a new Certificate of Occupancy the day after the hearing, which reflected that the Planned Development permitted minor auto repair but not major auto repair or used car sales.

In the months following the hearing, Mr. Cerkezi stopped selling used cars on the property but continued major auto repair in violation of the Planned Development and his newly-issued Certificate of Occupancy. The City issued multiple citations for these violations. Mr. Cerkezi sued, alleging that the City's issuance of a corrected Certificate of Occupancy violated his due process rights under the Fifth and Fourteenth Amendment. The City moved to dismiss under Rule 12(b)(6).

*Cerkezi v. City of Arlington*, No. 4:23-cv-00991-P, 2024 WL 265873, at *1 (N.D. Tex. Jan. 24, 2024) (mem. op. and order) (footnote omitted).

In disposing of Euro Car Tech's federal claims, the court first held that Euro Car Tech's "due process claim failed because [it] did not have a protected property interest in [the] erroneously-issued Certificate of Occupancy." *Id.* at *3. The court concluded that Euro Car Tech "was never authorized to conduct major auto repair or sell used cars on the property. . . . To the extent [its] Certificate of Occupancy said otherwise, the certificate was void." *Id.* The court noted that other Texas constitutional cases had reached the same conclusion when courts encountered

4

"erroneously-issued" certificates or permits.  *Id.*  However, the court stated that even if Euro Car Tech "had a protected property interest in [its] erroneously-issued Certificate of Occupancy," it had received notice and a hearing.  *Id.* at *5.  Therefore, Euro Car Tech was provided due process.  *Id.*

Next, the court addressed the argument that the City's issuance of a new Certificate of Occupancy that did not permit major auto repair constituted a regulatory taking in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.  *Id.*  Again, the court rejected the claim because Euro Car Tech "never had a right to use the property for major auto repair or used car sales" and had no property interest in the "erroneously-issued Certificate of Occupancy."  *Id.*

Finally, the court "decline[d] to estop the City from enforcing its zoning ordinances insofar as [Euro Car Tech] hinge[d its] estoppel theory on the City's alleged violations of [its] constitutional rights."  *Id.* at *6.  The court also declined to exercise its supplemental jurisdiction over Euro Car Tech's state law claims.  *Id.*  Therefore, the court granted the City's motion to dismiss the federal claims with prejudice and the state claims without prejudice.  *Id.*

## B. The Appeal to the Fifth Circuit

Euro Car Tech appealed the district court's ruling.  *See Cerkezi v. City of Arlington*, No. 24-10084, 2024 WL 4023769 (5th Cir. Sept. 3, 2024) (per curiam) (unpublished).  While on appeal, the City informed the United States Court of Appeals for the Fifth Circuit that it had amended its Code of Ordinances to authorize

5

Euro Car Tech's auto repair business to continue at the same location. *Id.* at *1. Because "the circumstances that precipitated [Euro Car Tech's] lawsuit ha[d] changed, and the City no longer threaten[ed] to oust [Euro Car Tech] from the current location for [its] auto repair business," the Fifth Circuit dismissed the case as moot. *Id.*

## C. The State Court Litigation

Euro Car Tech sued the City in state court. In its pleadings, Euro Car Tech stated that it performed "major auto repair, as allowed by its Certificate of Occupancy ('CO') issued by the City [ ] in 2018" but that "the City has determined that it issued the CO in error and now demands that [Euro Car Tech] build an expensive fence or cease major auto repair operations and abandon their lease and vacate the premises without any compensation."[3] In Euro Car Tech's words,

> To mitigate [its] damages, on April 9, 2024, [Euro Car Tech] sought a change from the City Council once again seeking to allow major auto repair at the location. The Council's staff advised the Council that [Euro Car Tech] should build an expensive fence encompassing its property with automatic gates. [Euro Car Tech] appeared and agreed that the fence was better than being shut down, recognizing that the City would not otherwise allow the business to operate, and more citations would accrue. [footnote omitted]

Euro Car Tech alleged causes of action for inverse condemnation, estoppel, and violations of Section 211.019(d) of the Texas Local Government Code. It sought "compensation for the fence [it is] being forced to build, or compensation for closing

---

[3]While Euro Car Tech's live pleading also referenced its used car business, the pleadings stated that it has "relocated [its] vehicle sales, without payment by the City, eliminating that issue from the dispute."

or moving, and compensation for moving [its] used car businesses [as] well as attorney's fees and costs of cost, and any other relief to which [it was] entitled."

The City answered, asserting a general denial and the affirmative defense of governmental immunity. After conducting discovery, the City filed its motion, combining traditional and no-evidence motions for summary judgment with a plea to the jurisdiction. The City attached evidence to the motion including Cerkezi's deposition; three City ordinances; five Certificates of Occupancy; an application for zoning amendment; minutes of various Planning & Zoning Commission and City Council meetings; a City Staff Report; a letter from the City's Assistant Director for Planning and Development Services; and excerpts from the Unified Development Code, the Building Code, and the zoning ordinances of the City. Euro Car Tech responded to the motion, attaching as evidence Cerkezi's declaration; four Certificates of Occupancy; code compliance documents; photographs; citations; a link to the March 8, 2022 Arlington City Council meeting; and a city ordinance. The trial court denied the motion, and the City appealed.

## III. DISCUSSION

In three issues on appeal, the City argues that (1) it is entitled to dismissal of Euro Car Tech's inverse condemnation claim because it has not unreasonably interfered with Euro Car Tech's use and enjoyment of the property; because Euro Car Tech had no vested property right in the operation of a major auto repair business since "major auto repair" was a prohibited use before Euro Car Tech signed its lease

7

or opened for business; and because the building official's issuance of Certificates of Occupancy in violation of the law did not create a vested property right; (2) it is entitled to dismissal of Euro Car Tech's estoppel claims because the City's zoning ordinance, and specifically the requirement that Euro Car Tech erect a fence around the property, should not be estopped in light of the fact that Euro Car Tech (a) agreed to the fence requirement and (b) has already constructed the fence; because the City should not be estopped from enforcing its Code of Ordinances because justice does not require it; and because it would interfere with the City's performance of its governmental functions; and (3) it is entitled to dismissal of Euro Car Tech's claim pursuant to Section 211.019 of the Texas Local Government Code because Euro Car Tech's business is not a "nonconforming business as a result of the adoption of or change to a zoning regulation or boundary"; because the City's enforcement of its pre-existing zoning ordinance is not the "adoption of or change to a zoning regulation or boundary"; because a Certificate of Occupancy does not adopt or change a zoning regulation or boundary; and because Euro Car Tech cannot rely on any zoning changes that occurred before Section 211.019's effective date of May 19, 2023.

## A. Immunity and the Standard of Review

Unless the State consents to suit, sovereign immunity deprives a trial court of subject-matter jurisdiction over lawsuits against the state or certain governmental units. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (op. on reh'g). Cities are political subdivisions of the state and, absent waiver, are similarly

entitled to governmental immunity.[4] *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g). Subject-matter jurisdiction cannot be conferred or taken away unless the Legislature has expressly waived immunity. *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010).

A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 232. "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Here, we focus on the City's challenges to the jurisdictional facts, as those challenges are dispositive.

A plea to the jurisdiction may be like a no-evidence motion for summary judgment by asserting that the plaintiff has produced no evidence of an element required for the immunity waiver to apply. *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024). The plea may mirror a traditional motion for summary judgment by attaching evidence in an effort to conclusively negate jurisdiction. *Id.* at 447–48. Or the plea may be like a hybrid motion for summary judgment where both parties attach

---

[4]Although courts often use the terms sovereign immunity and governmental immunity interchangeably, we use the term governmental immunity in reference to the City. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *see also Arlington v. City of Arlington*, No. 2-23-00288-CV, 2024 WL 2760415, at *1 n.1 (Tex. App.—Fort Worth May 30, 2024, no pet.) (mem. op.). While sovereign immunity protects the State as well as "various divisions of state government, including agencies, boards, hospitals, and universities" from liability, governmental immunity protects political subdivisions of the State, including cities. *Wichita Falls State Hosp.*, 106 S.W.3d at 694 n.3.

evidence. *Id.* at 448. "Whatever the government may call its jurisdictional challenge—a plea to the jurisdiction, a motion to dismiss, or a motion for summary judgment—we look to its substance." *Id.*; *see Oscar Renda Contracting, Inc. v. Bruce*, 689 S.W.3d 305, 311 (Tex. 2024) (noting that "our Court has consistently held that we examine the substance of a motion or pleading rather than requiring the formality of a title").

The plaintiff has the burden of establishing facts that affirmatively show the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If the plea challenges the existence of jurisdictional facts, we must consider the evidence. *Miranda*, 133 S.W.3d at 227. We review the grant or denial of a plea to the jurisdiction de novo, "determin[ing] whether the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

## B. Inverse Condemnation

In its pleadings, Euro Car Tech complained that the "City enacted a taking in the form of inverse condemnation under Texas State Constitution Article I § 17 by requiring [it] to build an expensive fence or close down without compensation for the fence or for closing the business." It labels the fence requirement as a "regulatory-taking in the form of inverse-condemnation." On appeal, Euro Car Tech characterizes any consent to the fencing requirement as a "coerced concession."

10

In its first issue, the City argues that the trial court improperly denied its motion because Euro Car Tech failed to properly plead an inverse condemnation claim. Specifically, the City contends that there can be no unreasonable interference with Euro Car Tech's use or enjoyment of the property because Euro Car Tech consented to the fencing restriction, had no vested property right in the use of its property if it violated the City's zoning laws, and had no vested property rights in a Certificate of Occupancy.

The elements of an inverse condemnation or "takings" claim are that (1) an entity with eminent domain power intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to, (3) public use. *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 26 (Tex. 2024); *see* Tex. Const. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, *unless by the consent of such person. . . .*" (emphasis added)). "Article I, Section 17 itself recognizes the owner's 'consent' as a defense" to liability for inverse condemnation. *Tex. Dep't of Transp.*, 690 S.W.3d at 27; *see Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 844 (Tex. 2010) ("A person who consents to the governmental action, however, cannot validly assert a takings claim."); *see also Bauer v. City of Waco*, No. 10-19-00020-CV, 2020 WL 7253430, at *4 (Tex. App.—Waco Dec. 9, 2020, no pet.) (mem. op.) ("A landowner may consent to property being taken or damaged without payment of any compensation.").

11

A taking can be a physical occupation, appropriation, or invasion of property or a regulatory action that is so restrictive or intrusive "that it effectively 'takes' the property." *Commons of Lake Hous., Ltd. v. City of Houston*, 711 S.W.3d 666, 676 (Tex. 2025). A regulatory taking may occur when a law or ordinance (1) requires an owner to suffer a permanent physical loss or invasion of its property, (2) completely deprives an owner of all economically beneficial use of its property, or (3) unreasonably interferes with the owner's right to use and enjoy its property. *Id.* Whether a compensable taking has occurred is a question of law for the courts to decide. *Id.* Because consent would negate the takings claim, we will examine whether Euro Car Tech consented to the fence requirement as a condition of the City's rezoning of the property. *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 844.

It is undisputed that, in 2024, Euro Car Tech sought a change in its zoning to permit major auto repair on the property. On March 6, 2024, the City's Planning and Zoning Commission considered the request to permit major auto repair.[5] The Commission approved the request with various conditions, including the following: "An eight-foot-tall fence shall be placed along the north, south, and west sides of the property with at least a six-foot fence from those fences towards the building on the north and south sides."

---

[5]A proposed change to a city's zoning ordinance must first be brought before the planning and zoning commission. *See* Tex. Loc. Gov't Code Ann. § 211.007(b).

12

At the meeting, Euro Car Tech's attorney stated, "[W]e've said that we'll put a fence around the facility," and "[W]e're willing to build a fence just like we talked about."[6] In addition, in response to a comment by one commissioner that a fence would be reasonable and that "[a]uto repair places all over the city do that very same thing," Cerkezi responded, "If you guys think that looks good, I'm okay with that because it's going to protect my property as well." He further stated, "I'm okay with the fence as well around the three sides of the building."

On April 9, 2024, the City Council considered the request to rezone the property to permit major auto repair. The Staff Report presented to the Council stated that the Planning and Zoning Commission had approved the rezoning request to include "major auto repair" with certain conditions, including that "[a]n eight-foot-tall fence shall be placed along the north, south, and west sides of the property with at least a six-foot fence from those fences towards the building on the north and south sides." In addition, the Staff Report provided the following in bold: "The applicant

---

[6]Before the trial court and in their respective briefs, both parties cite to various meetings of the City Council and the City's Planning and Zoning Commission that are available on the City's website. As noted by the parties, a video recording of the March 6, 2024 meeting of the City's Planning and Zoning Commission is on the City's website—*see* Arlington, Tex., Planning and Zoning Commission Regular Session (March 6, 2024), available at https://arlingtontx.granicus.com/player/clip/4772?view_id=10&redirect=true (last viewed January 5, 2026)—and we take judicial notice of it. *See City of El Paso v. Fox*, 458 S.W.3d 66, 72 (Tex. App.—El Paso 2014, no pet.) (sua sponte taking judicial notice of minutes from city council meeting); *Lazarides v. Farris*, 367 S.W.3d 788, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (taking judicial notice of minutes from city council meeting that were publicly available on city's website).

has agreed with the above stipulations and made the updates to the development/site plan, including landscaping within the landscape setback along Park Springs Boulevard and fencing towards the front of the structure."

During the hearing at the City Council meeting,[7] the following discussion occurred:

> [Councilmember]: Okay, your client has agreed to the fence on three sides and partially the front between the building and the property lines but set back. So that leaves, uh, by my count, eleven parking spaces in the front.
>
> [Euro Car Tech's attorney]: That sounds right.
>
> [Councilmember]: Okay.
>
> [Euro Car Tech's attorney]: And I think there's a fence. There's gonna be a gate too, so it actually will be four sides is my understanding.
>
> [Councilmember]: The fence, it will be a rolling fence from the [unintelligible] that will secure the entire property.
>
> [Euro Car Tech's attorney]: That's correct.

While Euro Car Tech now argues that it did not agree to pay for the fence, questions about the fence and its cost were addressed at Cerkezi's deposition, and he acknowledged that nobody at either the Planning and Zoning Commission or the City agreed to pay for any part of the fence.

_____

[7]A video recording of the April 9, 2024 meeting is available on the City's website—*see* Arlington, Tex., City Council Regular Meeting (April 9, 2024), available at https://arlingtontx.granicus.com/player/clip/4799?view_id=9&redirect=true (last viewed January 5, 2026)—and we take judicial notice of it. *See City of El Paso*, 458 S.W.3d at 72; *Lazarides*, 367 S.W.3d at 799.

Q. The City did tell you that you had to have the fence, though, correct?

A. That's correct.

Q. And no one on the city council said that the City would contribute to that, correct?

A. That's correct.

Q. And no one on the planning and zoning commission said that the City would contribute to that, correct?

A. That's correct.

. . . .

Q. Okay. So neither [your attorney] nor you told anyone at the City that the City was going to be expected to cover some or all of the cost of the fencing?

A. While I was there, no.

As a condition to the rezoning request, the City required a fence to be built around part of the property. While the fence was discussed at length before both the Planning and Zoning Commission and the City Council, Euro Car Tech never objected to or raised any concerns about the fencing requirement. Ultimately, the zoning request was approved and became effective April 30, 2024.

The Fifth Circuit "reviewed the recordings of official meetings" and stated, "That [Euro Car Tech] would have to install a fence around some portion of the property was discussed in the meetings, and neither [Euro Car Tech] nor [its] counsel demurred." *Cerkezi*, 2024 WL 4023769, at *1. We agree. By seeking the rezoning of its property and failing to raise an objection about the fence before either the

15

Planning and Zoning Commission or the City Council, we conclude that Euro Car Tech consented to the construction of the fence around its property as a condition to the City's rezoning of the property for use as "major auto repair." *Compare Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 169 (Tex. App.—Fort Worth 2007, pet. denied) (holding that "by proposing, adopting without objection, or agreeing . . . without objection" to certain requirements, the applicant consented to those requirements), and *Midtown Edge, L.P. v. City of Houston*, No. 01-12-00730-CV, 2014 WL 586232, at *10 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no pet.) (mem. op.) ("By choosing to construct the new line at its own expense and adopting *without objection* the City's requirements, Edge consented to those requirements."), *with Town of Flower Mound v. Stafford Ests. L.P.*, 71 S.W.3d 18, 28 (Tex. App.—Fort Worth 2002) (overruling the Town's issue and emphasizing that the landowner "did unsuccessfully object to the [road] improvements condition at every administrative level within the Town"), *aff'd*, 135 S.W.3d 620 (Tex. 2004), and *Sefzik v. City of McKinney*, 198 S.W.3d 884, 895 (Tex. App.—Dallas 2006, no pet.) (rejecting city's waiver and estoppel defenses when developer objected to the condition imposed for plat approval at every administrative level). Because a person who consents to governmental action cannot validly assert a takings claim, Euro Car Tech's inverse condemnation claim must be dismissed.[8] *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 844; *Bauer*, 2020 WL 7253430, at *4. Therefore, we sustain the City's first issue.

---

[8]While Euro Car Tech argues that its consent was coerced or involuntary, it

16

## C. Estoppel

In addition to its inverse condemnation claim, Euro Car Tech alleged that because it "relied on City agents" in opening its business under the issued Certificate of Occupancy, the City should be "estopped from closing" its major auto repair business without compensation. It pleads both equitable and quasi-estoppel against the City. Similar to its argument about the takings claim, the City contends that it should not be estopped from requiring Euro Car Tech to install a fence around the property because Euro Car Tech agreed to the requirement and it has already installed the fence.[9]

Equitable estoppel requires proof of five elements: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies

---

offers no evidence to support that allegation.

[9]The City states that Euro Car Tech has "on information and belief" completed installation of the fence. However, the City "recognizes that the record on appeal does not include proof that Euro Car Tech has completed the fence and gate installation." In its reply brief, the City argues that Euro Car Tech has "implicitly conced[ed] that the fence has been built" by Euro Car Tech's statement in its brief that it is asserting estoppel "even if the fence is now built at [Euro Car Tech's] expense." Because there is no evidence in the record that the fence has been installed, we do not consider this part of the City's argument. *See Quorum Intern. v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied) ("We cannot look outside the record in an effort to discover relevant facts omitted by the parties; rather, we are bound to determine this case on the record as filed.").

on the representations. *PDT Holdings, Inc. v. City of Dallas*, 712 S.W.3d 597, 603 (Tex. 2025). "[W]hen equitable estoppel is invoked against a municipality, the case must be an exceptional one in which 'justice requires' estoppel and its application must not 'interfere[ ] with the exercise of . . . governmental functions.'" *Id.* (quoting *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774 (Tex. 2006)); *see City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970) (stating that, as a general rule, the doctrine of equitable estoppel does not apply against a unit of government exercising its public or governmental functions). Whether equitable estoppel applies is a question for a court to decide. *PDT Holdings, Inc.*, 712 S.W.3d at 603.

Ordinarily, the party asserting estoppel is required to establish the elements of equitable estoppel. *Saunders v. Hartley*, No. 14-24-00575-CV, 2025 WL 2355814, at *7 (Tex. App.—Houston [14th Dist.] Aug. 14, 2025, no pet.) (mem. op.). However, in some situations, courts will dispense with the need for showing all elements of formal estoppel, thus applying a type of estoppel known as quasi-estoppel. *Id.*; *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied) ("Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance."). Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).

Here, as set out above, the evidence reflects that Euro Car Tech raised no objection to building a fence around the property in order to receive the City's approval of the zoning change. And while Euro Car Tech complains that it had relied on the "erroneously-issued" Certificate of Occupancy, Euro Car Tech had no protected property interest in the "erroneously-issued" Certificate of Occupancy.[10] *See Cerkezi*, 2024 WL 265873, at *3; *see also Bd. of Adjustment for City of San Antonio v. E. Cent. Indep. Sch. Dist.*, No. 04-14-00341-CV, 2015 WL 1244665, at *5 (Tex. App.—San Antonio March 18, 2015, pet. denied) (mem. op.) ("Because the certificate of occupancy was issued in violation of the ordinance, the certificate was void, and Sarosh Management did not acquire any rights under the certificate."); *Swain v. Bd. of*

---

[10]Both Euro Car Tech and the City rely on *PDT Holdings, Inc.* in support of their positions. 712 S.W.3d 597. In *PDT Holdings, Inc.*, the Texas Supreme Court examined whether estoppel was applicable where "city officials affirmatively told the builder that 36 feet was the applicable height limit, issued an amended permit for that height after inspecting the construction, and stated that the duplex was 'OK TO FINISH' even after they identified the ordinance violation." *Id.* at 600. In deciding the issue, the court first noted that "[m]istaken actions by city officials generally will not equitably estop the city from performing its governmental functions." *Id.* It then recognized that estoppel may be necessary "to prevent manifest injustice in exceptional cases where a citizen relies on affirmatively misleading government statements and suffers a substantial loss as a result." *Id.* In ultimately finding estoppel applicable, the court stated that "this is not a case involving a city official's mere mistaken issuance of a building permit or mistaken acquiescence in an ordinance violation." *Id.* at 607. Rather, the court noted that (1) there was evidence that the city officials affirmatively misled the builder into constructing a noncompliant structure; (2) there was evidence that the builder would be completely denied relief absent estoppel; (3) there was evidence that the city's affirmative misrepresentation would result in permanent loss; (4) affirmative misdirection by the city overcame constructive notice; and (5) the city did not act quickly in notifying the builder of the ordinance in question. *Id.* at 607–08. Such "exceptional" facts are not present here.

*Adjustment of City of Univ. Park*, 433 S.W.2d 727, 733 (Tex. App.—Dallas 1968, writ ref'd n.r.e.) (holding permit issued in violation of ordinance was void ab initio and no rights were acquired by the permit holder).

Moreover, the City's building ordinance stated that "[i]ssuance of a Certificate of Occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction." Arlington, Tex., Constr. Code § 4.14.C (2022). Almost identical language was found on the Certificate of Occupancy issued to Euro Car Tech in 2018. In addition, the City's building ordinance provided that the "Building Official may, in writing, suspend or revoke a Certificate of Occupancy . . . issued under the provisions of this Code whenever the certificate is issued in error, or on the basis of incorrect information supplied, or when it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any provision of this Code or other provisions of law." *Id.* § 4.14.F.

Under the Certificate of Occupancy issued here, Euro Car Tech could acquire no rights, and no estoppel would have been created. *See City of Amarillo v. Stapf*, 101 S.W.2d 229, 232 (Tex. [Comm'n Op.] 1937) (stating that the action of the building inspector in granting a permit was unauthorized, the permit was void, and "[u]nder such permit appellee could acquire no rights, and no estoppel would be created"). Therefore, Euro Car Tech failed to assert a valid estoppel claim and

thereby failed to waive the City's immunity. Accordingly, we sustain the City's second issue.

## D. Local Government Code Section 211.019

In its third issue, the City attacks Euro Car Tech's claim under Local Government Code Section 211.019, a statute that addresses nonconforming land use. Specifically, the Section states that "[a] person using a property in a manner considered to be a nonconforming use as a result of the adoption of or change to a zoning regulation or boundary may continue to use the property in the same manner unless required by a municipality to stop the nonconforming use of the property." Tex. Loc. Gov't Code Ann. § 211.019(b). If a municipality requires a property owner or lessee to stop the nonconforming use of a property, the owner or lessee is entitled to recover certain damages. *Id.* § 211.019(d). A municipality's immunity from suit and governmental immunity from liability are waived for purposes of an action brought under this Section of the Local Government Code. *Id.* § 211.019(p).

Here, however, there is no nonconforming land use as a result of the adoption of or change to a zoning regulation or boundary. Our sister court has defined a "nonconforming use of land" as a use that existed legally when the zoning restriction became effective and has continued to exist even though no longer in compliance with currently applicable restrictions. *Anderton v. City of Cedar Hill*, 447 S.W.3d 84, 89 (Tex. App.—Dallas 2014, pet. denied) (citing *City of Univ. Park v. Benners*, 485 S.W.2d 773, 777 (1972) and Black's Law Dictionary 1540 (7th ed. 1999) for definition of

21

"nonconforming use" as "land use that is impermissible under current zoning restrictions but that is allowed because the use existed lawfully before the restrictions took effect"). When determining whether there is a legal "nonconforming use" in a particular case, the proper focus is on the legislative enactments of the regulation body. *Id.* And the party claiming privilege to continue a "nonconforming use"—in this case Euro Car Tech—bears the burden of proving its preexisting status. *Id.*

The evidence reflects that Euro Car Tech's business was not a "nonconforming use." *See* Tex. Loc. Gov't Code Ann. § 211.019(b). The ordinance at issue here, Ordinance 96-111, was enacted in 1996. *See* Arlington, Tex., Ordinance 96-111 (Aug. 20, 1996). That ordinance changed the zoning to a "PD" or "Planned Development," continued the "Community Services" designation, and added a minor auto repair use that was not otherwise permitted in this zoning. *See Cerkezi*, 2024 WL 265873, at *1. The zoning did not authorize major auto repair or used car sales. *See id.*

Cerkezi offered jurisdictional evidence that he "operated [his] business under the name Euro Car Tech" and used the property for major auto repair and used car sales from 2018 until 2022. However, based on the zoning established by Ordinance 96-111, Euro Car Tech's uses of the property for major auto repair and used car sales were not legal uses when the zoning restriction became effective. *See id.* at *3. And Euro Car Tech acquired no rights under the "erroneously-issued" Certificate of Occupancy, as it was void. *See id.*; *City of Amarillo*, 101 S.W.2d at 232. Therefore, the

22

use was not a "nonconforming use," and Texas Local Government Code Section 211.019 is inapplicable and will not support a claim. We therefore sustain the City's third issue.

## IV. CONCLUSION

Having sustained the City's three issues, we reverse the trial court's order denying the City's motion and render judgment dismissing Euro Car Tech's claims against the City.

/s/ Dana Womack

Dana Womack
Justice

Delivered: January 8, 2026